# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | | |
|---|---|---|
| SIERRA CLUB, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | Civil Action No. 6:12-cv-00108-WSS |
| ENERGY FUTURE HOLDINGS | § | |
| CORPORATION and LUMINANT | § | |
| GENERATION COMPANY LLC, | § | |
| | § | |
| *Defendants.* | § | |

---

## PLAINTIFF SIERRA CLUB'S
## RESPONSE TO DEFENDANTS' MOTION TO DISMISS

---

## TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................... 1

II.    BACKGROUND ...................................................................................................... 5

       A.  Regulatory Framework ................................................................................ 5

           1.   The Clean Air Act and the Texas State Implementation Plan ............................ 5

           2.   Title V Permits ................................................................................ 6

           3.   Texas's Limited Affirmative Defense for MSS Events ....................................... 8

       B.  Factual Background................................................................................... 10

           1.   The Big Brown Plant.............................................................................. 10

           2.   The Big Brown Plant's Title V Permit ...................................................... 10

           3.   The Big Brown Plant's MSS Permit Amendment................................................. 12

III.   STANDARD OF REVIEW ....................................................................................... 12

IV.    ARGUMENT ........................................................................................................ 13

       A.  Plaintiff Satisfies Article III and Associational Standing Requirements ................... 13

       B.  Sierra Club Seeks to Enforce Uncontested Emission Limits in the Texas SIP,
           Not Attack Defendants' Title V Permit ....................................................... 15

           1.   The Emissions Limits Upon Which Plaintiff's Claims Rest Are SIP
                Limitations That Plaintiff Can Enforce ...................................................... 16

           2.   Defendants' Title V Permit Requires the Big Brown Plant to Meet the
                Emissions Limits Which Plaintiff Is Enforcing ............................................ 17

       C.  Sierra Club Complied with All Statutory and Regulatory Requirements for
           Pre-Suit Notice ............................................................................... 18

       D.  The Complaint Sufficiently Alleges Opacity and PM Violations............................. 20

       E.  Sierra Club's Claim for Injunctive Relief Is Not Moot.............................. 23

       F.  The Court Should Not Abstain from this Clean Air Act Enforcement Case............. 25

V.     CONCLUSION........................................................................................................ 25

Plaintiff Sierra Club ("Plaintiff") files this, its response to Defendants Energy Future Holdings Corporation and Luminant Generation Company LLC's (collectively, "Defendants") Motion to Dismiss, Doc. 11 ("Motion to Dismiss").

## I.     INTRODUCTION

The Motion to Dismiss rests on the theory—fundamentally at odds with the federal Clean Air Act ("CAA" or the "Act")—that Defendants can flagrantly violate their CAA emission limits without facing enforcement.  As explained further below, Defendants' Motion to Dismiss lacks merit and should be denied.

Defendants do not dispute that emissions from the Big Brown Steam Electric Station ("Big Brown plant" or "the plant") have exceeded federally enforceable limits many thousands of times between 2007 and 2011.  Instead, Defendants seek to divert attention from their non-compliance by presenting a scattershot of misleading arguments and attacking Plaintiff's intentions in bringing this lawsuit.  Defendants make sweeping statements regarding the availability of purported exemptions from compliance with permit conditions during certain periods, but can point to no law or rule establishing a free pass to violate their longstanding emission limits.  Moreover, there is nothing "drastic" about the relief that Sierra Club seeks, as environmental citizen suits that seek compliance with emission limits are commonplace.  Doc. 11 at 1.  To the extent that this Court may assess civil penalties as allowed by the CAA, it can hardly be said that Sierra Club seeks to "extract" even a single dollar, since civil penalties go to the U.S. Treasury, not to the Plaintiff.  *Id.*

As established below, Defendants' effort to avoid liability for its straightforward legal violations must fail.  None of Defendants' arguments supports dismissal of this enforcement action.  Plaintiff easily satisfies Article III and associational standing requirements.  Through this lawsuit, Plaintiff seeks to enforce uncontested limits in the Texas State Implementation Plan

("SIP"), not attack Defendants' Title V Operating Permit No. O65 ("Title V Permit"). Furthermore, Sierra Club complied with all pre-suit notice requirements and the Complaint provides Defendants with ample notice of Plaintiff's simple and direct causes of action. Plaintiff is entitled to injunctive relief for Defendants excessive and ongoing violations, notwithstanding a state permit amendment that does not impact federally-enforceable Texas SIP limits. And finally, Defendants' abstention argument is moot.

Plaintiff brings this action under the citizen suit provision of the CAA, alleging that Defendants' Big Brown plant has violated and continues to violate the Act. Plaintiff claims that Defendants violated and continue to violate: (1) the 30 percent opacity limit contained in the Texas SIP and the Big Brown plant's Title V Permit; and (2) the particulate matter ("PM") limit contained in the Texas SIP and the plant's Title V Permit. The Texas SIP has, for decades, and certainly for all times relevant to this suit, bound Defendants' plant to a 30 percent opacity limit and a 0.3 pound per million British thermal units ("lb/mmBtu") PM limit. Defendants do not contest that these longstanding SIP limits apply to the plant.

Defendants' Big Brown plant, in 2010, emitted more mercury than any other power plant in the United States and was the single largest source of PM pollution in Freestone County. Dirty Kilowatts: America's Top Mercury Power Plant Polluters (Nov. 2011) (Doc. 25-19) at 6; Doc. 25-20 ¶ 7. As such, its emissions record naturally receives the attention of Plaintiff Sierra Club, a non-profit membership organization dedicated to protecting and preserving the environment, including outdoor air quality. Sierra Club member Barbara Lawrence lives near the Big Brown plant and experiences the power plant's air pollution first hand. The plant's chronic opacity and PM violations endanger Sierra Club members and the greater public who breathe the air downwind of the power plant, and harm the environment.

2

Through this lawsuit, Plaintiff seeks to enforce the plant's federally-enforceable opacity and PM limits, which are designed to protect the environment and public health.  Opacity is a measure of soot, or particulate matter, that a facility emits.  Texas rules define opacity as "the degree to which an emission of air contaminants obstructs the transmission of light expressed as a percentage of light obstructed as measured by an optical instrument or trained observer."  30 TEX. ADMIN. CODE § 101.1(72).  The greater the particulate matter in a gas stream, the less light passes through the gas stream, and the greater the opacity level.  Based on the terms of the Big Brown plant's Title V Permit, excessive opacity indicates that pollution controls are not working properly and that particulate matter emission limits are being exceeded.  *See* Title V Permit (Doc. 1-3) at 44.[1]

Particulate matter is a mixture of small particles, including mercury and other toxics, which has been shown to cause significant health and environmental problems.[2]  EPA and public health experts have firmly established the causal connection between exposure to fine particulate matter and a number of adverse health impacts including: decreased lung function, aggravated asthma, chronic bronchitis, heart attacks and premature death.[3]  Recent studies find that PM exposure may result in tens of thousands of excess deaths per year, and that no safe level of particulate matter exists.[4]

---

[1] This response cites previously filed documents as "Doc. __" with page references as they appear in docketed versions.

[2] EPA, Office of Air and Radiation, Particulate Matter, Health, http://www.epa.gov/pm/ health.html (last visited July 16, 2012).

[3] *Id.*

[4] *See* EPA, National Center for Environmental Research, Particulate Matter, http://www.epa.gov/ncer/science/pm/index.html (last visited July 16, 2012); EPA, America's Children and the Environment, Measure E3: Long-Term Exposure to Criteria Air Pollutants http://www.epa.gov/ace/contaminants/e3-background.html (last visited July 16, 2012).

According to Defendants' "true, accurate, and complete" reports,[5] emissions from the Big Brown plant have exceeded the 30 percent opacity limit at least 6,520 times between July 2007 and December 2010.  Likewise, relying on Defendants' self-reported data, and information contained in Defendants' certified permit application, Plaintiff calculated at least 370 violations of the 0.3 lb/mmBtu PM limit between January 2008 and July 2011.  Defendants do not deny that they have exceeded these clear limits.  Instead, Defendants claim that the opacity and PM violations occurred during periods of maintenance, startup, and shutdown ("MSS"), during which they claim they cannot operate pollution controls and thus are exempted from liability.  Defendants' unsubstantiated claims regarding the availability of purported exemptions from compliance with permit conditions during periods of MSS, are not substitute for a straightforward application of the governing law.  Moreover, a motion to dismiss is not the appropriate vehicle to decide whether Defendants can raise an affirmative defense and if so, whether they have met their burden of proof in satisfying it.[6]  Furthermore, EPA has made clear that coal plants such as the Big Brown plant can reduce emissions during the majority of MSS events, by burning clean fuels, rather than coal, prior to activating emission controls during boiler start-up.  77 Fed. Reg. 9,381, 82 (Feb. 16, 2012).

Because, as shown below, the governing law fully supports this Court's jurisdiction and the viability of Plaintiff's claims, Defendants' Motion to Dismiss must be denied.

---

[5] *See*, *e.g.,* Doc. 25-2 at 1.

[6] "An affirmative defense is defined, in the context of an enforcement proceeding, as a response or defense put forward by a defendant, regarding which the defendant has the burden of proof . . ." 75 Fed. Reg. 68,989, 68,991 n. 4 (Nov. 10, 2010).  To qualify for the Texas affirmative defense for unplanned MSS events, Defendants must demonstrate that each event meets a long list of factors.  30 TEX. ADMIN. CODE § 101.222(b)-(d).

## II.    BACKGROUND

### A.    Regulatory Framework

#### 1.    The Clean Air Act and the Texas State Implementation Plan

The Clean Air Act is designed to protect and enhance the quality of the nation's air, so as to promote the public health and welfare and the productive capacity of its population.  42 U.S.C. § 7401(b)(1).  The Act "establishes a partnership between EPA and the states for the attainment and maintenance of national air quality goals."  *Natural Res. Def. Council v. Browner*, 57 F.3d 1122, 1123 (D.C. Cir. 1995).   The State of Texas implements the Act's permitting requirements through a State Implementation Plan,[7] the overall body of mainly state air pollution regulations adopted by the state environmental agency, the Texas Commission on Environmental Quality ("TCEQ"), and submitted to and approved by EPA.  Upon EPA approval, a SIP's requirements "have the force and effect of federal law" and can be enforced by the state, EPA, and the public.  *Union Elec. Co. v. Envtl. Prot. Agency,* 515 F.2d 206, 211 (8th Cir. 1975), *aff'd* 427 U.S. 246 (1976); *Nat'l Mining Assoc. v. Envtl. Prot. Agency*, 59 F.3d 1351, 1363 (D.C. Cir. 1995) (per curiam) (citing 42 U.S.C. § 7413); 42 U.S.C. §§ 7413 & 7604; 40 C.F.R § 52.23.

A SIP may be revised from time to time in accordance with the provisions of Section 110 of the Act, which require EPA approval of the SIP revision. 42 U.S.C. §§ 7410(a) & (l).  Thus, the state cannot amend its SIP for purposes of federal law, "unless and until the EPA approve[s] any changes."  *Safe Air for Everyone v. Envtl. Prot.* Agency, 488 F.3d 1088, 1097 (9th Cir.

---

[7] The SIP must provide for the attainment and maintenance of the National Ambient Air Quality Standards ("NAAQS"), among other requirements.  42 U.S.C. § 7410(a)(1).  EPA established the NAAQS to protect human health and the environment for seven "criteria pollutants," including PM.  *Id*. § 7409; 40 C.F.R. pt. 50.  An area that meets the NAAQS for a criteria pollutant is deemed to be in "attainment" for that pollutant and an area that does not is a "nonattainment" area.  42 U.S.C. § 7407(d)(1).   Although Freestone County is currently designated as in attainment with the PM ambient air quality standards, research suggests that no safe level of PM exists. *See supra* n. 4.

2007).  Where a state's SIP revision is pending before EPA, "the approved SIP is the applicable implementation plan."  *General Motors v. United States*, 496 U.S. 530, 540 (1990).

The existing Texas SIP and CAA provide a minimum baseline of protectiveness.  Thus, Texas can adopt its own air quality standards, but only to the extent such standards are *more stringent* than those required by federal law.  42 U.S.C. § 7416; *see State of Conn. v. Envtl. Prot. Agency*, 656 F.2d 902, 909 (2nd Cir. 1981).

The Texas SIP limits the amount of various pollutants that power plants such as the Big Brown plant may emit out of their smokestacks.  Opacity from such plants "shall not exceed 30 percent averaged over a six-minute period."  30 TEX. ADMIN. CODE § 111.111(a)(1)(A).  The rule allows one exemption from the 30 percent opacity limit per hour if the exceedance occurs during certain activities.  *Id.* at § 111.111(a)(1)(E).  Likewise, power plants may not emit more than 0.3 lb/mmBtu of total PM averaged over a two-hour period.  *Id.* at § 111.153(b).  EPA approved both of these standards as applicable requirements of the Texas SIP.  40 C.F.R. § 52.2270(c); 61 Fed. Reg. 20,732, 20,734 (May 8, 1996) (approving 30 TEX. ADMIN. CODE § 111.111(a)(1)(A) into Texas SIP);  37 Fed. Reg. 10,895 (May 31, 1972) (approving 30 TEX. ADMIN. CODE § 111, Rule 105.3, the original codification of the 0.3 lb/mmBtu limit, into the Texas SIP); 74 Fed. Reg. 19,144 (Apr. 28, 2009) (approving 30 TEX. ADMIN. CODE § 111.153(b) into the Texas SIP).

## 2.    Title V Permits

Title V of the CAA, 42 U.S.C. §§ 7661-7661f, establishes an operating permit program for "major sources" of air emissions, such as the Big Brown plant. Title V operating permits bring together pre-existing requirements into one permitting scheme and do not establish independent emission standards and limitations.  *United States v. Duke Energy Corp*., 278 F. Supp. 2d 619, 651-52 (M.D.N.C. 2003).  Texas implements the Title V program pursuant to EPA-approved regulations in Texas Administrative Code, Chapter 122.  Both this program and

6

the Act make it unlawful for a permit holder to violate any requirement of his or her Title V Operating Permit, or to operate a major source except in compliance with a permit issued under Title V.  30 TEX. ADMIN. CODE § 122.143(4); 42 U.S.C. § 7661a(a).

Texas Title V permits may contain both "applicable requirements" and "state-only requirements."  Applicable requirements include EPA-approved regulations contained in the Texas SIP that apply to particular emission units at a Title V permitted facility.  30 TEX. ADMIN. CODE at § 122.10(2)(A).  "State-only" requirements are independently established by the TCEQ and not required by the CAA or under any applicable requirements.  *Id.* at § 122.10(28).  While the state may enforce both applicable requirements and state-only requirements, only applicable requirements are always federally enforceable. *Id.* at § 122.143(4) & (6).

Title V permits may contain "permit shields," which provide that compliance with the conditions of the permit shall be deemed compliance with specified applicable requirements.[8]  40 C.F.R. § 70.6(f).  "[E]xcept for those requirements addressed by a permit shield," compliance with a Title V permit "does not relieve the permit holder of the obligation to comply with any other applicable rules, regulations, or orders of the commission, or of the EPA."  30 TEX. ADMIN. CODE § 122.143.  Sources remain subject to enforcement for violations of SIP limits and other permits not covered by the Title V permit shield. *See* 40 C.F.R. § 52.23 (authorizing EPA enforcement for failure to comply "with any approved regulatory provision of a State implementation plan"); 42 U.S.C. § 7604 (authorizing citizen suits for violations of "a standard or limitation established under an approved State Implementation Plan").

---

[8] The applicable requirements specified by the permit shield must either be included in the permit or, if not included, the permit shield terms must demonstrate why the particular requirement does not apply.  40 C.F.R. § 70.6(f)(1)(i) & (ii).

Federal rules require Title V permits to contain compliance assurance monitoring ("CAM") requirements for certain emission units that use a pollution control device to achieve compliance with any emission limitation or standard.  40 C.F.R. § 64.2(a).  CAM requires owners or operators of such sources to conduct monitoring designed to ensure that pollution control devices are functioning properly and to provide a "reasonable assurance of compliance with applicable requirements."  62 Fed. Reg. 54,900 (Oct. 22, 1997).

### 3.    Texas's Limited Affirmative Defense for MSS Events

The current Texas SIP contains a limited affirmative defense for violations of emission limits and standards during unplanned maintenance, start-up, and shutdown ("MSS") activities at an industrial facility, such as the Big Brown plant, that occurred after January 10, 2011.  The defense is limited to monetary penalties only, and does not affect liability for such violations or actions for injunctive relief.  30 TEX. ADMIN. CODE § 101.122(b)-(d).  In order to claim the affirmative defense, the violator must prove that numerous criteria apply to each violation in question.  *Id.*  Previously, the Texas SIP either did not contain an affirmative defense or contained a limited defense.

Prior to June 30, 2006, the Texas SIP provided some relief from otherwise applicable emission limits during MSS activities.  Up until 2005, to avoid liability for violations of emission limits and standards, the rules required the industrial facility to give notice and gain approval from the State prior to an event, and if "unplanned," show that the event was "unavoidable" and that it took corrective action as soon as practicable.  *See* 37 Fed. Reg. 10,842, 10,895-98 (May 31, 1972); 30 TEX. ADMIN. CODE § 101.11 (2000); 65 Fed. Reg. 70,792 (Nov. 28, 2000).  In 2005, with EPA approval, the SIP was revised to replace the original limited exemption with a limited affirmative defense against monetary penalties only.  70 Fed. Reg. 16,129, 16,130-31 (Mar. 30, 2005).  However, by their own terms, those limited affirmative defense rules expired

8

on June 30, 2006, such that the Texas SIP contained no affirmative defense for violations of federally enforceable permit limits or emission standards and limitations. *Id*. at 16,131 (noting that rules expire on June 30, 2005); 70 Fed. Reg. 50,205 (Aug. 26, 2005) (extending expiration date to June 30, 2006). EPA warned industry that "[u]pon expiration of the provisions, *all emissions in excess of applicable emission limitations* during [MSS] activities remain violations of the Texas SIP, subject to enforcement action by the State, EPA or citizens." 70 Fed. Reg. at 16,131 (emphasis added).

In 2006, Texas proposed a revision to the Texas SIP that would introduce an affirmative defense for excess emissions from both planned and unplanned MSS events that would apply only to monetary penalties (and not to liability or injunctive relief), and would require Defendants to prove that numerous criteria all apply to each opacity violation in question. *See* 75 Fed. Reg. 26,892 (May 13, 2010). Finally, after a lengthy exchange with Texas on this most recent submission, on November 10, 2010, the EPA formally disapproved the Texas MSS provisions that apply to "planned" MSS events as "inconsistent with the [Clean Air] Act." 75 Fed. Reg. 68,989 (Nov. 10, 2010). EPA specifically rejected 30 TEX. ADMIN. CODE § 101.122(h), which establishes an affirmative defense to penalties for planned MSS events, in addition to a permitting scheme to permit emissions from planned MSS events. *Id.* at 68,991. According to EPA, Texas may not exempt a source from complying with any requirements of the federally-approved SIP. *Id*. at 68,998 & 68,992 ("EPA's longstanding position has been that it is not appropriate to provide exemptions from compliance with emission limits in SIPs . . .."). EPA approved Texas's affirmative defense for unplanned, or emergency MSS events, for events occurring on or after January 10, 2011. *Id*. at 68,994.

**B.     Factual Background**

**1.      The Big Brown Plant**

Defendants own and operate the Big Brown plant, a coal-fired electric generating plant, located in Freestone County, Texas.  The plant consists of two main boilers, designated as Units 1 and 2, and associated facilities and material handling operations.  Units 1 and 2 began operation in 1971 and 1972, respectively.  The plant's main boilers emit a slew of air contaminants, including particulate matter, sulfur dioxide, nitrogen dioxide, lead, carbon monoxide, mercury and arsenic.  In 2010, the plant emitted 1,610 pounds of mercury, more than any other power plant in the United States.  Doc. 25-19 at 6.  The Big Brown plant is also the single largest source of particulate matter pollution in Freestone County.  Defendants reported that the power plant emitted 1,138.1 tons of $PM_{10}$ (PM with an aerodynamic diameter less than or equal to a nominal ten micrometers) into the air in 2010, accounting for over 92 percent of Freestone County industrial $PM_{10}$ emissions that year.  Doc. 25-20 ¶ 7.

**2.      The Big Brown Plant's Title V Permit**

TCEQ renewed the Big Brown plant's current Title V Permit in 2005.  Doc. 11 at 8.  The plant's Title V Permit specifically incorporates the 0.3 lb/mmBtu PM limit.[9]  Doc. 1-3 at 40.  The Title V Permit also requires emissions from the Unit 1 and 2 boiler stacks to meet a 20 percent opacity limit at all times.  *Id.* at 21 & 40 (citing TAC Board Order 90-14 at 4 (Exhibit

---

[9] Throughout the Motion to Dismiss, Defendants refer to the PM limit's CAM monitoring requirement, which requires Defendants to report deviations of the PM limit to TCEQ when emissions from the Big Brown plant's Unit 1 and 2 boilers exceed 20 percent opacity for a two-hour period, excluding periods of MSS.  *See* Doc. 11 at 9, 14, & 20.  This monitoring requirement is completely unrelated to the Texas SIP's 20 percent and 30 percent opacity limits that bind the Big Brown plant.  Furthermore, contrary to Defendants' misleading claims, because the CAM requirements are simply monitoring requirements, Plaintiff is not restricted to enforcing the 0.3 lb/mmBtu PM limit based on the CAM parameters.  Defendants themselves state elsewhere, that "[t]he CAM requirements, by definition, do not demonstrate noncompliance or that the plant 'has exceeded legal limits."  Doc. 32 at 5 (citing 30 TEX. ADMIN. CODE § 122.142(c), (h), & (i)).

10

A)).   TAC Board Order 90-14, filed under and pursuant to 30 Tex. Admin. Code § 111.113, established an opacity limitation of 20 percent for Big Brown Units 1 and 2.   TAC Board Order 90-14 at 4.   30 Tex. Admin. Code § 111.113, which authorizes TCEQ to establish alternative opacity limitations, is an EPA-approved regulation, contained in the Texas SIP, and therefore, TAC Board Order 90-14 is federally enforceable.   61 Fed. Reg. 20,732.   Luminant's Title V Permit incorporates the 20 percent opacity limit, by reference to 30 Tex. Admin. Code § 111.113 and TAC Board Order 90-14, as an applicable requirement of the permit.   While, the current permit does not explicitly list the applicable 30 percent opacity limit in 30 Tex. Admin. Code § 111.111(a)(1), this limit is "subsumed" or "streamlined" into the stricter 20 percent opacity limit.[10]

Nothing in the Big Brown plant's Title V Permit shields Defendants from enforcement of their permit and Texas SIP limits during MSS events.   The permit does not shield Defendants from claims for penalties during MSS events, because the permit requires Defendants to "comply" with 30 Tex. Admin. Code § 101.122.   Regardless, the version of that provision incorporated into the Title V Permit expired on June 30, 2006, well before any of the violations named in the Complaint took place.   *See id.* at § 101.122(h) (2005) ("If [TCEQ] submits a revised version of this section [to EPA for review and approval into the Texas SIP], this section

---

[10] EPA Title V permit writing guidance allows multiple emission limits to be "streamlined" into the most stringent limit.   *See* White Paper Number 2 for Improved Implementation of the Part 70 Operating Permits Program, EPA, Office of Air Quality Planning and Standards at 2, 6-20 (Mar. 5, 1996) (Exhibit B, (excerpt)).   Streamlining reduces redundancies in the permit.   However, "a source violating a streamlined emissions limitation in the part 70 permit may be subject to enforcement action for violation of one (or more) of the subsumed applicable emissions limits." *Id.* at 16.   Here, the 20 percent opacity limit is more stringent than the 30 percent opacity limit, and thus, the 30 percent limit is subsumed into the more stringent 20 percent limit.   Accordingly, Defendants report violations of both limits to the TCEQ on a quarterly basis in their Excess Emissions Reports.   *See, e.g.,* Doc. 25-2 at 9 & 10.   Regardless, whether or not the Title V permit explicitly lists the 30 percent opacity limit is irrelevant to Plaintiff's enforcement action, as the Texas SIP limit applies to the plant independently of the Title V permit.

expires on June 30, 2006.").  Nor does the permit contain a permit shield provision, meaning that the permit does not shield Defendants from compliance with applicable limits in the Texas SIP.

### 3.      The Big Brown Plant's MSS Permit Amendment

On December 16, 2011, pursuant to 30 TEX. ADMIN. CODE § 101.122(h), TCEQ amended Big Brown's state air permit No. 56445 to authorize planned MSS emissions at the Big Brown plant.  *See* Doc. 12 at 118.  The amendment purports to exempt the plant from Texas SIP limits during such events.  However, as discussed above, EPA explicitly rejected 30 TEX. ADMIN. CODE § 101.122(h) for incorporation into the Texas SIP, finding it incompatible with the Act and expressly stating that Texas cannot unilaterally exempt sources from SIP emission limits or standards.[11]

On January 17, 2012, Sierra Club filed an Original Petition in Texas state district court, challenging the TCEQ's action in issuing the permit on state law grounds.  *See* Doc. 12 at 86. After choosing not to prosecute the case, on July 3, 2012, Sierra Club filed a notice of nonsuit in the case, the procedural step necessary to obtain a dismissal under the Texas Rules of Civil Procedure.[12]

### III.     STANDARD OF REVIEW

Defendants seeks dismissal of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(1), for lack of subject-matter jurisdiction, and under Rule 12(b)(6), for failure to

---

[11] Defendants allege that because they applied for a revision to its Title V Permit to incorporate this permit amendment, they may operate pursuant to the permit amendment terms prior to revision.  Doc. 11 at 10, n. 12.  Because this state-issued permit was issued pursuant to regulations explicitly disapproved by EPA for incorporation into the SIP, the current Title V Permit does not authorize the Big Brown plant to operate pursuant to amended permit no. 56445.

[12] *See* Plaintiff Sierra Club's Notice of Nonsuit with Prejudice, *Sierra Club v. Tex. Comm'n on Envtl. Quality*, Cause No. D-1-GN-12-000127 (53rd Distr. Ct., Travis County, Tex. July 3, 2012) (Doc. 36-1).  Under Tex. R. Civ. P. 162, a plaintiff has a right to nonsuit his case, and thus obtain a dismissal, at any time before he has introduced all of his evidence other than rebuttal evidence. A plaintiff's nonsuit is effective immediately upon filing.  *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862-63 (Tex. 2010).

state a claim.  A motion to dismiss for failure to state a claim under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).  The Court must construe the complaint in a light most favorable to the plaintiff and take allegations contained in the complaint as true.  *Oppenheimer v. Prudential Sec., Inc.*, 94 F.3d 189, 194 (5th Cir. 1996).  A district court may dismiss a claim under 12(b)(6) only when it appears beyond a doubt that the plaintiff can provide no set of facts in support of its claims that would provide a basis for relief.  *Id.*  Moreover, the allegations need only give the defendant fair notice of what the claim is and the grounds upon which it rests.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  When presented with a 12(b)(6) motion to dismiss, the Court's task is limited to deciding whether the plaintiff is entitled to offer evidence in support of its claims, not whether the plaintiff will eventually prevail. *Abbott v. BP Exploration and Prod. Inc.*, No. H-09-1193, 2011 WL 923504, at *3 (S.D. Tex. Mar. 15, 2011).

## IV.    ARGUMENT

### A.    Plaintiff Satisfies Article III and Associational Standing Requirements

Sierra Club easily meets the governing standing requirements.  An association has standing to bring suit on behalf of its members when: (1) one or more of the organization's members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members.  *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977); *Friends of the Earth, Inc. v. Chevron Chemical Co.*, 129 F.3d 826, 827-28 (5th Cir. 1997).  One of Sierra Club's members has standing to sue if she suffers: (1) an injury in fact; (2) that is traceable to the defendant's challenged conduct; and (3) that is likely to be redressed by a favorable decision in the district court.  *Lujan v. Defenders of*

*Wildlife*, 504 U.S. 555, 560 (1992); *McCall v. Dretke*, 390 F.3d 358, 361 (5th Cir. 2004).  The plaintiff must meet its burden to establish standing "with the manner and degree of evidence required at the successive stages of the litigation."  *Croft v. Governor of Texas*, 562 F.3d 735, 745 (5th Cir. 2009) (citing *Lujan*, 504 U.S. at 560-61).

Sierra Club has met the pleading standards by alleging facts sufficient to demonstrate standing.  At the pleading stage, as here, a plaintiff need only make a "short and plain statement of the grounds for the court's jurisdiction" and "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(1), (2); *Twombly*, 550 U.S. at 555.  Consequently, "on a motion to dismiss, plaintiffs must allege facts that give rise to a plausible claim of [their] standing."  *Cornerstone Christian Schools v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009).  The Complaint provides that Sierra Club members have been injured by Defendants' opacity and PM violations, and lists four specific interests that are directly injured by such violations.  Doc. 1 ¶¶ 10 & 11.  Furthermore, as set forth in Sierra Club's Motion for Partial Summary Judgment, hereby incorporated by reference, Sierra Club provides the declaration of Barbara Lawrence, an individual Sierra Club member who suffers an injury in fact caused by Defendants' illegal air emission.  Doc. 25-19.

Defendants rely on inapposite law to support their proposition that the Complaint itself must identify a "specific and particularized injury of an individual member."  Doc. 11 at 12.  Specifically, Defendants rely on cases at the *summary judgment*, not at the pleading stage, where the plaintiff failed to identify individual members.  *See, e.g. NAACP v. City of Kyle, Tex.*, No. A-05-CA-979-LY, 2008 WL 7889658, at *2 (W.D. Tex. Jan. 18, 2008) (Plaintiffs did not identify injured member at summary judgment stage); *Nat'l Treasury Emps. Union v. U.S. Dep't of Treasury*, 25 F.3d 237, 242 (5th Cir. 1994) (same).  In contrast, Sierra Club identified and

included a declaration of an individual Sierra Club member injured by the illegal air emissions from the Big Brown plant.  *See* Doc. 25-19.

Accordingly, under the law applicable to establishing standing at the pleading stage, Plaintiff has more than amply alleged facts that give rise to a plausible claim of its standing to bring this lawsuit.

**B.      Sierra Club Seeks to Enforce Uncontested Emission Limits in the Texas SIP, not Attack Defendants' Title V Permit**

Plaintiff's enforcement action is based upon limitations present in both the Texas SIP and Defendants' Title V permit.  Defendants' attempts to depict Plaintiff's claims as collateral attacks on the issuance of the Title V Permit misconstrue the nature of Plaintiff's claims, the relevant case law, and Defendants' current Title V Permit.  Plaintiff is entitled to enforce the uncontested, long-standing emission limits contained in the Texas SIP that apply to the Big Brown plant.  And regardless, Defendants' current Title V Permit binds Defendants to the 0.3 lb/mmBtu PM limit and to a 20 percent opacity standard, into which less strict 30 percent limit Plaintiff is enforcing is subsumed, giving Plaintiff no reason to participate in the 2005 Title V permitting process in regard to these particular limits.  Accordingly, Plaintiff's action is not a collateral attack on the Big Brown Title V permit and this Court has jurisdiction over Plaintiff's claims pursuant to Section 304(a) of the CAA. [13]

---

[13]  Likewise, the doctrine of primary jurisdiction does not apply, contrary to Defendants' argument in note 18 of its Motion to Dismiss.  As discussed below, Plaintiff seeks to enforce the Texas SIP, not challenge terms in Defendants' Title V Permit.  Plaintiff does not contest the Title V Permit, whose opacity and PM limits are consistent with the SIP.  Accordingly, no issues need be referred to an administrative body, presumably the TCEQ, for review, "such as writing a new permit for Defendant or to setting new [emission limits]."  *La. Envtl. Action Network v. LWC Mgmt. Co.*, Civ. Action No. 07-0595, 2007 WL 2491360 *6 (W.D. La. Aug. 14, 2007). Moreover, numerous courts have held that the doctrine of primary jurisdiction is inapplicable to environmental citizen suits.  *See id.*; *St. Bernard Citizens for Envtl. Quality v. Chalmette Refining, L.L.C.*, 348 F. Supp. 2d 765, 767-68 (E.D. La. 2004) (primary jurisdiction does not apply to citizen enforcement of the CAA).

1.    **The Emissions Limits Upon Which Plaintiff's Claims Rest are SIP Limitations that Plaintiff Can Enforce**

Section 304 of the CAA expressly authorizes citizen suit plaintiffs to bring suit for violations of any emission standards or limitations, which include standards or limitations in Title V permits *and* standards or limitations in the SIP.  42 U.S.C. § 7604(a)(1) & (f)(4).  Thus, while Defendant's Title V permit does include the emissions limits upon which Plaintiff's suit is based, Plaintiff may enforce violations of SIP limits, even if they are not in a Title V permit.  Only where a Title V permit includes a "permit shield" term that expressly shields the permit holder from the obligation to comply with an otherwise applicable SIP limit, is a citizen precluded from enforcing the terms of an approved SIP.  30 TEX. ADMIN. CODE § 122.143.  Defendants' Title V Permit contains no such shield.

Both of the emission limits Plaintiff seeks to enforce are in the SIP, and are clearly applicable.  40 C.F.R. § 52.2270(c); 61 Fed. Reg. 20,732 (approving 30 TEX. ADMIN. CODE § 111.111(a)(1)(A) into Texas SIP);  74 Fed. Reg. 19,144 (approving 30 TEX. ADMIN. CODE § 111.153(b) into the Texas SIP).  In fact, Defendants do not dispute the fact that the Texas SIP binds the Big Brown Plant Units 1 and 2 to a 30 percent opacity limit and a 0.3 lb/mmBtu PM limit.  In contrast, in support of their collateral attack argument, Defendants rely on cases where the plaintiffs were not enforcing SIP limits.  Rather, the plaintiffs sought to enforce limits in purportedly expired permits and performance limits allegedly triggered by a plant modification, respectively, which both the defendants and the state agency had determined were not applicable years prior to the lawsuits.  *See Tex. Campaign for the Env't v. Lower Colo. River Auth*., No. H-11-791, 2012 WL 1067211 (S.D. Tex. Mar. 28, 2012); *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008 (8th Cir. 2010).

2.    **Defendants' Title V Permit Requires the Big Brown Plant to Meet the Emissions Limits Which Plaintiff Is Enforcing**

Additionally, because Defendants' Title V Permit required the Big Brown plant to limit opacity to at least 30 percent and meet a 0.3 lb/mmBtu PM limit at all times, Plaintiff had no reason to "challenge the scope and content of" the plant's permit in 2005. Doc. 11 at 14.  As discussed above, Defendants' Title V Permit contains an applicable requirement limiting emissions from the Units 1 and 2 boilers to 20 percent opacity. *See* Doc. 1-3 at 21 & 40 (citing TAC Board Order 90-14).   The Title V Permit, contrary to Defendants claim (Doc. 11 at 9, n.10), does not label the 20 percent opacity limit as a "state-only" requirement. *See* Doc. 1-3 at 40.  The 30 percent opacity limit—which Plaintiff is enforcing in Cause of Action No. 1—is "subsumed"[14] into the Title V permit's more stringent 20 percent opacity limit.  Accordingly, Defendants report violations of both limits to the TCEQ on a quarterly basis in its Excess Emissions Reports. *See, e.g*., Doc. 25-2 at 9 & 10.  Defendants' Excess Emission Reports list the authority for the 30 percent limit as "30 TAC 111.111." *See, e.g. id.* at 15.

Likewise, the Title V Permit expressly incorporates the 0.3 lb/mmBtu PM limit, which Plaintiffs seek to enforce in Cause of Action No. 2.  Doc. 1-3 at 40.  Defendants claim that under the Title V Permit, "PM compliance is judged by excluding all periods of MSS."  Doc. 11 at 14.  This statement is inaccurate—it derives not from the permit's applicable requirements that include the PM limit, but rather, from the Title V Permit's CAM monitoring requirements. *Id.* (citing Doc. 1-3 at 44, CAM requirements, rather than Doc. 1-3 at 40, applicable requirements). However, compliance with the 0.3 lb/mmBtu PM limit is not determined by the methods set forth in the CAM requirements.  62 Fed. Reg. at 54,902.  As Defendants themselves state in other briefing, "[t]he CAM requirements, by definition, do not demonstrate noncompliance or

---

[14] *See supra* n. 10.

that the plant 'has exceeded legal limits." Doc. 32 at 5. According to the terms of the Texas SIP and incorporated into the Title V Permit, Defendants violate the PM limit when they emit more than 0.3 lb/mmBtu, averaged over a two-hour period, whether or not the emissions occur during periods of MSS. 30 TEX. ADMIN. CODE § 111.153(b); Doc. 1-3 at 40. Plaintiff properly alleges violations of this PM limit based on actual PM levels that Plaintiff calculated utilizing data Defendants reported to federal and state agencies. *See* Doc. 1 ¶ 30.

## C.     Sierra Club Complied with All Statutory and Regulatory Requirements for Pre-Suit Notice

Plaintiff's pre-suit notice easily satisfies the CAA's notice requirement of "reasonable specificity." *San Francisco BayKeeper, Inc. v. Tosco Corp.*, 309 F.3d 1153, 1158 (9th Cir. 2002). No more is required, because the purpose of the CAA's notice requirement "is not to *prove* violations, it is to inform the polluter about what it is doing wrong, and to allow it an opportunity to correct the problem." *Id.* (quotations and citations omitted). Plaintiff is not obligated "to list every specific aspect or detail every alleged violation." *Comty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 951 (9th Cir. 2002) (quoting *Pub. Interest Research Group v. Hercules, Inc.*, 50 F.3d 1239, 1248 (3d Cir. 1995)). Rather, the plain language of EPA's regulations requires that a notice letter provide sufficient information so that the recipient can identify those details. 40 C.F.R. § 54.3(b).

Here, Plaintiff's detailed Notice of Intent, dated October 27, 2011,[15] included "sufficient information to permit [Defendants] to identify the specific standard, limitation, or order which has allegedly been violated, the activity alleged to be in violation, the person or persons responsible for the alleged violation, the location of the alleged violation, [and] the date or dates

---

[15] The notice letter sent to Defendants on February 17, 2010 has no bearing on this lawsuit. Plaintiff's Complaint clearly identifies the October 27, 2011 letter as providing the required pre-suit notice.

of such violation." *Id*. The Notice of Intent specifically identifies by citation and in numeric form, the opacity and particulate matter emission limits Defendants violated and continue to violate, the nature of the violations (exceedances of the emission limits by air pollution from Units 1 and 2), the location of the violations, and the specific dates of the violations. *See* Doc. 1-2 at 3-5. Plaintiff included Defendants' self-reported, certified documents, which identify the date and times of each 30 percent opacity limit exceedance.[16] *See id*. at 4. The Notice of Intent further synthesizes the violations by unit per quarter. *See id*. at 15. Furthermore, Plaintiff included a chart that lists the precise day and hour, and exact numerical value of each particulate matter limit exceedance. *See id*. at 21-25. This information is more than sufficient to permit Defendants—who have far greater access to their files and facilities than Plaintiff—to identify what they did wrong and what actions could have corrected these problems. Additional details are not needed, as Defendants, "[a]s the permit holder, [] [are] best able to identify [them]." *Sierra Club v. Portland Gen. Elec. Co.*, 663 F. Supp. 2d 983, 1000 (D. Or. 2009) (finding notice letter stating violations occurred between 2003 and 2008 to be sufficient).

Courts have held that a pre-suit notice identifying a range of several years is sufficient to satisfy 42 U.S.C. § 7604. *Public Citizen*, 2006 WL 3813766 at *4 (finding pre-suit notice related

---

[16] Defendants make much of the fact that Plaintiff listed 7,645 opacity exceedances in the Notice of Intent, whereas Defendants claim they reported 8,879 six minute intervals as deviations of the 30 percent opacity limit during the same time period. *See* Doc. 11 at 15-16. However, as Plaintiff explained in its notice letter, Plaintiff conservatively exempted one exceedance of the 30 percent opacity limit per hour, under the assumption that it might fall under one of the exemptions in 30 TEX. ADMIN. CODE § 111.111(a)(1)(E). Defendants, who have better knowledge of which six minutes may qualify for this exemption, can select which six minute period to exempt themselves. *See* 30 TEX. ADMIN. CODE § 111.111(a)(1)(E) (allowing the violator to select "a period aggregating not more than six minutes in any 60 consecutive minutes" for exemption). Although Plaintiff believes it provided more than sufficient notice of the opacity violations, to the extent the Court finds this poses an issue, the appropriate response is to permit Plaintiff to amend the Complaint to include the additional violations, rather than dismiss the Complaint.

to violations occurring "since at least 2000" to be sufficient); *see also Sierra Club v. Tri-State Generation and Transmission Ass'n., Inc.*, 173 F.R.D. 275, 283 (D. Colo. 1997) (finding allegation of violations that "occurred 'for at least the past five years' and continued to occur" to be sufficient); *P.I.R.G. of N.J. v. Hercules, Inc.*, 50 F.3d 1239, 1247-1251 (3rd Cir.1995) (reversing district court finding that pre-suit notice under Clean Water Act must specify every day of violation); *Fried v. Sungard Recovery Servs., Inc.*, 900 F. Supp. 758, 765 (E. D. Penn. 1995) (finding sufficient a pre-suit notice under CAA specifying that "violations occurred repeatedly between 1990 and 1994 and are continuing").[17]  Plaintiff's specific identification of the dates of the violations more than satisfies the CAA's pre-suit notice requirements.

Because the Notice of Intent provided specific information regarding the opacity and particulate matter limits violated, the activity in violation, the dates of such violations, the location of the violations, and the violator, Defendants' motion to dismiss on notice grounds lacks merit and should be denied.

### D.    The Complaint Sufficiently Alleges Opacity and PM Violations

Contrary to Defendants' arguments, Plaintiff more than satisfied Fed. R. Civ. P. 8(a)'s liberal pleading requirement for both opacity and PM violations.   "[T]he Court is currently considering only a 12(b)(6) motion to dismiss. For this purpose, Plaintiff[] need only plead facts which, if true, would suffice to 'raise a right to relief above the speculative level.'" *Ortiz v. Geo Group, Inc.*, SA-07-CA-645-XR, 2008 WL 219564 (W.D. Tex. Jan. 25, 2008) (quoting

---

[17] Plaintiff's Notice of Intent is readily distinguishable from the notices addressed in the cases cited by Defendants.  *See National Parks and Conservation Ass'n, Inc. v. Tennessee Valley Authority*, 502 F.3d 1316, 1329-1330 (11th Cir. 2007) (Rather than identifying the "specific standard" allegedly violated, National Parks' letter broadly alleged that the operation of Colbert Unit 5 violated "all of the requirements of Subpart Da" which "sets emissions standards for several pollutants." The notice also only noted that TVA "failed every day" to comply with regulations over a 20 year time period.); *see also Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 802-03 (9th Cir. 2009) (notice letter completely failed to specify claims under a particular section of the Clean Water Act).

*Twombly*, 550 U.S. at 555–56).  Plaintiff's claims in this case are simple: Defendants violated their opacity limit 6,520 times between July 2007 and December 2010 and their particulate matter limit 370 times between January 2008 and July 2011, and continue to violate these limits. Both the opacity limit and PM limit are straightforward numerical limits—a violation consists of nothing more than emitting pollutants out of the power plants smokestacks in excess of such. The allegations in the Complaint amply provide fair notice to Defendants of what the claims are and the grounds upon which they rest.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Twombly*, 550 U.S. at 555).

For opacity, the Complaint alleges 6,520 violations of the 30 percent limit, and includes the specific SIP provision violated (30 TEX. ADMIN. CODE § 111.111(a)) and a reference to the Title V Permit, the exact number of violations, the time period of violations (July 2007 through December 2010), and the activity in violation (operation of Units 1 and 2).  *See* Doc. 1 ¶ 26. Furthermore, the Complaint includes a chart that breaks down the violations by quarter, by unit. *See* Doc. 1-4.  Plaintiff is not required to marshal its evidence at the pleading stages of this case regarding the exact factual circumstances surrounding each of these thousands of violations, including the specific level of opacity emitted.   Nor need Plaintiff's Complaint include allegations related to any available affirmative defense related to MSS events, which Defendants must prove.  *See supra* note 6.

Likewise, for PM, the Complaint properly pleads violations of the 0.3 lb/mmBtu standard,[18] alleging that actual PM emissions from either Units 1 or 2 of the Big Brown plant

---

[18]  Sierra Club's Complaint properly identifies and alleges that Defendants violated the 0.3 lb/mmBtu PM standard.  *See* Doc. 1 ¶¶ 20 & 29 ("30 TEX. ADMIN CODE § 111.153(b), which has been approved by EPA into the Texas SIP, prohibits emissions from the Big Brown plant from exceeding '0.3 pound of total suspended particulate per million Btu heat input, averaged over a two-hour period.'").  Likewise, Attachment D to the Notice of Intent, identifies this same

exceeded that standard at least 370 times between January 2008 and July 2011. *See* Doc. 1 ¶ 30. The Complaint includes Plaintiff's Notice of Intent, Attachment D of which lists the exact date, time, and magnitude of each PM violation. *See* Doc. 1-2 at 21-25. The Court should disregard Defendants' claims to the contrary, which rely on the Title V Permit's CAM monitoring requirements (judged by reference to the plant's opacity and excluding MSS). As in their collateral attack argument, Defendants misleadingly cite to the Title V Permit's CAM monitoring requirements as the PM standard that Plaintiff should allegedly be enforcing through this lawsuit, rather than the permit's applicable requirements, which include the binding and enforceable PM limit. Doc. 11 at 20 (citing Doc. 1-3 at 44, CAM requirements, rather than Doc. 1-3 at 40, applicable requirements). Plaintiff is not required to allege PM violations based on the Title V Permit's CAM monitoring requirements. As discussed above, *supra* at 17-18, the Big Brown plant's Title V Permit CAM monitoring requirements do *not* establish monitoring as a method for directly determining continuous compliance with applicable requirements, nor do they bind citizens to enforcing permit limits through CAM monitoring methods. 62 Fed. Reg. at 54,902. As Defendants state in other briefing, "[t]he CAM requirements, by definition, do not demonstrate noncompliance or that the plant 'has exceeded legal limits." Doc. 32 at 5.

Thus, the Complaint gives Defendants fair notice of Plaintiff's claims for opacity and PM violations and the grounds upon which they rest. *See Sierra Club v. City of Holland*, 2010 WL

---

standard in listing the specific violations. *See* Doc. 1-2 at 21. However, in the second line of ¶ 29, the Complaint mistakenly refers to a "0.3 lb/hour PM limit." This is merely a typographical error, which can be addressed via an amendment to Plaintiff's Complaint, if necessary. Furthermore, the Complaint does not use the "erroneous pounds per hour standard," contrary to Defendants' deceptive allegation. *See* Doc. 11 at 20 (citing Doc. 1-2 at 21-25, sixth column). Plaintiff converted the 0.3 lb/mmBtu limit into a pound per hour figure (Doc. 1-2 at 21-25, seventh and eight columns) by multiplying the 0.3 lb/mmBtu limit by Defendants' reported hourly heat input data, and compared this figure to the pounds of particulate matter emitted by Units 1 and 2 during every hour of plant operation (*id.* sixth column), to identify the 370 violations named in the Complaint (*id.* ninth and tenth columns).

816864 (W.D. Mich. Mar. 4, 2010) ("Were this court to accept Defendants' interpretation of the new standard, based on the facts Defendants assert were omitted, a plaintiff would be obligated to prove its claims in the complaint, rather than simply giving the Defendants notice of them.")

**E.      Sierra Club's Claim for Injunctive Relief is Not Moot**

When a state modifies a state permit pursuant to rules that EPA rejected, citizens are still entitled, under governing law, to enforce the limits contained in the SIP that has been federally-approved by EPA.   Accordingly, Defendants' argument that their recently amended state air permit no. 56445 shields them from claims of injunctive relief is erroneous.   Plaintiff's CAA citizen suit seeks to enforce PM and opacity limits contained in the federally-approved Texas SIP.   While TCEQ did, on December 16, 2011, amend Defendants' state air permit to accommodate planned MSS emissions, this amendment was performed pursuant to 30 TEX. ADMIN. CODE § 101.122(h), a rule that EPA rejected for incorporation into the Texas SIP.   *See* 75 Fed. Reg. 68,989.   TCEQ does not have the authority to "modify the federally-applicable terms of the SIP without review and approval by EPA."   *Id*. at 68,998.   Accordingly, permit no. 56445 does not shield Defendants from the applicable PM and opacity limits in the Texas SIP and Sierra Club's claim for injunctive relief is not moot.

The EPA-approved SIP "ha[s] the force and effect of federal law."   *Union Elec. Co.*, 515 F.2d at 211. Emissions standards and limitations established as part of a state's SIP remain federally enforceable until EPA approves revisions to the SIP.   *See General Motors*, 496 U.S. at 540 (citing 42 U.S.C. § 7410(a)) ("There can be little or no doubt that the existing SIP remains the 'applicable implementation plan' even after the State has submitted a proposed revision."). Thus, the State cannot amend its Implementation Plan for purposes of federal law, "unless and until the EPA approve[s] any changes." *Safe Air for Everyone,* 488 F.3d at 1097.   To hold otherwise would give Texas the authority to unilaterally amend its SIP, rendering the EPA's SIP

23

approval process largely meaningless. *United States v. Murphy Oil*, 143 F. Supp. 2d 1054, 1100-01 (W.D. Wis. 2001).

Pursuant to the well-established principle that the EPA-approved SIP "ha[s] the force and effect of federal law," a long line of cases have rejected similar attempts to rely on state law exemptions from federal emission limits under the Act.[19]   In a directly analogous case, a federal court rejected a state law exemption from SIP opacity limits. *See Sierra Club v. Tenn. Valley Auth.*, 430 F.3d 1337, 1346-51 (11th Cir. 2005).   The court found the state law exemption to be "tantamount to an unapproved modification of the opacity limitation contained in the Alabama SIP, because application of the rule changes what would otherwise be violations of that limitation into non-violations." *Id*. at 1346-1347.   Similarly, here, Defendants' state air permit does not excuse Defendants from compliance with the EPA-approved SIP limits for PM and opacity.

Furthermore, even if Defendants' state air permit impacted Plaintiff's available remedies for *planned* MSS events—which it cannot—this permit would not deprive Sierra Club of its right to seek injunctive relief for Defendants' ongoing opacity violations that occur during *unplanned* MSS events.   The frequency and severity of Defendants' violations indicate that the plant's

---

[19] *See United States v. Ford Motor Co*., 814 F.2d 1099, 1103 (6th Cir. 1987) (holding that compliance with a state court consent decree was no defense to violations of SIP emission limits because "the original [SIP] emission limit remains fully enforceable until a revision or variance is approved by both the State and EPA"); *St. Bernard Citizens for Envtl. Quality, Inc.*, 399 F. Supp. 2d at 734 ("Because there is no evidence that [an emergency state rule] has been approved by the EPA, it is not a valid and enforceable part of Louisiana's implementation plan, and it does not change defendant's [benzene emission limits]" in SIP-approved permits.); *United States v. General Dynamics Corp*., 755 F. Supp. 720, 722-24 (N.D. Tex. 1991) (plaintiff's compliance with state issued, non-EPA approved "agreed board orders," whose effect was to raise the emissions limitations set by the Texas SIP, did not relieve defendant from compliance with the emission limitations of the Texas SIP); *Pub. Citizen v. Amer. Elec. Power Co*., 2006 WL 3813766, at *5-6 (E.D. Tex. Dec. 27, 2006) (finding that Texas could not change a limit in a PSD permit limit issued pursuant to the Texas SIP "without federal approval").

current pollution control technology is designed to fail during MSS events in general.  If this Court orders the installation of modern and effective pollution controls, or at the very least, that the plant burn clean fuels during boiler start-up, rather than coal, prior to activating emission controls, opacity and particulate matter violations during unplanned events would be greatly reduced.

**F.     The Court Should Not Abstain from this Clean Air Act Enforcement Case**

Defendants argue that the Court should abstain from this CAA citizen suit under *Burford v. Sun Oil Co.,* 319 U.S. 315 (1943), given Sierra Club's state court suit, recently pending in Travis County District Court targeting TCEQ's issuance of a state air permit amendment authorizing emissions at the Big Brown plant.  However, as noted above, on July 3, 2012, Sierra Club filed a notice of nonsuit in *Sierra Club v. Texas Comm'n Envtl. Quality*, pursuant to Texas Rule of Civil Procedure 162.  *See* Doc. 36-1.  This notice serves as a voluntary dismissal of the case.  Tex. R. Civ. P. 162.  Accordingly, Defendants' argument that the Court should abstain from this enforcement case under the *Burford* doctrine is moot.[20]

## V.     CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion to Dismiss Plaintiff's claims pursuant to Rule 12(b)(1) and 12(b)(6).

_____

[20] Regardless, even if Sierra Club's state court action was still pending, abstention would be unwarranted, as the Texas state court matter identified by Defendants has no bearing or connection to this federal CAA citizen suit, which seeks to enforce the applicable PM and opacity limits in the Texas SIP, not contest the issuance of Defendants' state air permit.  When applied to CAA enforcement cases, such as this lawsuit, abstention is "overwhelmingly" disfavored, as it is clear that "no state cause of action is involved in a federal CAA citizen suit." *Sierra Club, Inc. v. Sandy Creek Energy Assoc., L.P.*, 627 F.3d 134, 144 (5th Cir. 2010) (citing *New Orleans Public Serv., Inc.*, 491 U.S. at 361 (rejecting the Fifth Circuit's finding that *Burford* abstention does not require a state-law claim to apply)); *see also La. Envtl. Action Network*, 2007 WL 2491360 *8-9 (holding that an enforcement action not challenging a permitting decision was not appropriate for *Burford* abstention).

Date:  July 17, 2012

Respectfully submitted,

By:

_____

Environmental Integrity Project
Erin Fonken
Texas Bar No. 24059112
Ilan Levin*
Texas Bar No. 00798328
1303 San Antonio Street, Suite 200
Austin, Texas 78701
Phone: 512-637-9477
Fax: 512-584-8019

Julie Kaplan**
DC Bar No. 414178
One Thomas Circle, NW, Suite 900
Washington, D.C. 20005
Phone: 202-263-4452
Fax: 202-296-8822

**ATTORNEYS FOR PLAINTIFF**

*Admitted *pro hac vice*
**Western District of Texas *pro hac vice* application filed on July 16, 2012

26

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of July, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

P. Stephen Gidiere III
Thomas L. Casey, III
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203

Charles D. Olson
Michael W. Dixon
Haley & Olson PC
510 North Valley Mills Drive, Suite 600
Waco, Texas 76710-6078

Stacey H. Dore
Energy Future Holdings Corp.
1601 Bryan Street, 41st Floor
Dallas, Texas 75201

__/s/Erin Fonken_____
Erin Fonken
