# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# WACO DIVISION

| | | |
|---|---|---|
| SIERRA CLUB, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | |
| | § | Civil Action No. 6:12-cv-00108-WSS |
| ENERGY FUTURE HOLDINGS | § | |
| CORPORATION and LUMINANT | § | |
| GENERATION COMPANY LLC, | § | |
| | § | |
| *Defendants.* | § | |

## PLAINTIFF SIERRA CLUB'S REPLY IN SUPPORT OF ITS
## MOTION FOR PARTIAL SUMMARY JUDGMENT

March 25, 2013

**TABLE OF CONTENTS**

**INTRODUCTION**……………………………………………………………………………..1

**ARGUMENT**…………………………………………………………………………………..1

I.    Defendants' Self-Reported Opacity Levels Above 30 Percent are Violations as a Matter of Law, and Defendants' Response Does Nothing Other Than Raise the Prospect of an Affirmative Defense to Penalties………………………………………1

    A.    The Affirmative Defense is Not Available for Violations that Happened Before January 10, 2011……………………………………………………….4

    B.    The Affirmative Defense Applies to Penalties Only, But Not to Injunctive Relief………………………………………………………………………...…5

    C.    That TCEQ Failed to Take Enforcement Action Does Not Negate, But Rather Heightens, This Court's Role in Redressing the Violations………………6

II.    Sierra Club Has Demonstrated Standing as a Matter of Law……………………………..8

    A.    Defendants Have Raised No Genuine Dispute as to Standing…….…………....9

    B.    The Court Should Deny Defendants' Rule 56(d) Request……….………………14

**CONCLUSION**…………………………………………………………….…………………...15

INTRODUCTION

Sierra Club files this reply in support of its motion for partial summary judgment. The issues Defendants raise both as to standing and to liability on the opacity claim – that opacity violations cannot cause any harm; that Freestone County currently meets national ambient air standards; that the wind blows mainly from the south; that the state environmental agency (the "TCEQ") has chosen not to take enforcement action; that an affirmative defense may apply; and others – are erroneous as a matter of law and/or immaterial to a ruling on liability.  Therefore, because Defendants have failed to raise a genuine dispute as to any material fact, Sierra Club is entitled to judgment on liability as a matter of law.

Defendants admit all the necessary facts to support a finding as to liability for at least 6,520 violations that are the subject of this motion. Defendants admit that Luminant operates the power plant. Doc. 86 at 31, ¶ 1.[1]  Defendants do not dispute the total number of reported events in which opacity exceeded 30 percent. Doc. 86 at 29, ¶ 9.  Defendants admit that Luminant submitted reports to the state environmental agency that include the 6,520 exceedances of the 30 percent opacity limit that are the subject of this motion.  Doc. 86 at 31, ¶ 1, at 35, ¶ 19. Defendants' remaining disputes are not factual at all, but rather legal conclusions.[2]

ARGUMENT

I. **Defendants' Self-Reported Opacity Levels Above 30 Percent are Violations as a Matter of Law, and Defendants' Response Does Nothing Other Than Raise the Prospect of an Affirmative Defense to Penalties**

---

[1] This Court can hold Luminant liable while withholding a ruling as to Defendant Energy Future Holding's owner-/operator-ship status.

[2] "TCEQ's regulations provide that excess opacity will not be found to be a violation if the … defenses are met" Doc. 86 at 33 ¶15; "Many deviations… are not violations" (¶16); "The demonstration criteria required by the affirmative defense… were met…[and] TCEQ correctly found… that no violation had occurred…" (¶21).

Defendants previously argued, in their motion to dismiss, that the opacity exceedences that form the basis of this claim are not redressable by this Court because the TCEQ issued a permit authorizing unlimited opacity levels during *planned* startups, shutdowns, and maintenance. Doc. 11 at 21. Now, in a complete about-face, they claim that all their thousands of reported opacity exceedences were *unplanned* and, therefore, subject to an affirmative defense. Doc. 86 at 12–13. The affirmative defense only applies to penalties, and not to injunctive relief. *Luminant Generation Co. v. U.S. EPA*, 699 F.3d 427, 435-36 (5th Cir. 2012) (*en banc* petition pending) ("For 'unplanned maintenance, startup or shutdown activity,' an affirmative defense against civil penalties would be available if the 'owner or operator proves ... all' of the listed criteria…"); *Id.* at 440 ("Regardless, even if all nine required criteria are met and the violator establishes the applicability of the approved affirmative defense, injunctive relief is still available." (citing 75 Fed.Reg. at 68,991 n.4)); *Id.* ("Additionally, the availability of the affirmative defense does not negate the district court's jurisdiction to assess civil penalties … it simply provides a defense, under narrowly defined circumstances, if and when penalties are assessed.").

Defendants admit all the necessary facts to establish liability as a matter of law. They do not dispute their reported exceedences of the 30 percent opacity limit contain at least 6,520 exceedences for which Sierra Club seeks summary judgment. Doc. 86 at 29; Doc. 86-6 at 5 (Glacken decl. ¶ 11). Indeed, they admit that their reports demonstrate "opacity events over the applicable limits that are not authorized by permit." Glacken decl. ¶ 4.

Instead, Defendants raise a host of erroneous, extraneous and/or irrelevant allegedly undisputed facts in an effort to cloud the relatively simple legal argument that at least 6,520 out

of their 7,567 admitted opacity exceedences are "violations." Doc. 86 at 33-42.[3] The TCEQ's Investigation Reports themselves do not demonstrate that each one of the affirmative defense criteria was met. In fact, Plaintiff will demonstrate – as part of its remedy case – that none of the exceedances qualify for the affirmative defense because, among other factors, the Big Brown plant *can* reduce soot levels during both *planned* and *unplanned* startup, shutdown, maintenance, and malfunction events. One way to do so is by utilizing modern pollution controls that can be operated effectively during high opacity events, or by burning cleaner fuels and undertaking other operational practices to reduce emissions during boiler startup, as EPA has recognized. *See* 77 Fed. Reg. 9,381, 9,382 (Feb. 16, 2012).

The Clean Air Act's citizen suit provision allows any person to bring an action against any person "alleged to have violated… or to be in violation of an emission standard or limitation." 42 U.S.C. § 7604(a). Defendants' argument that their self-reported opacity exceedances, or deviations, are not "violations" is a semantic distinction that lacks merit. Doc. 86 at 11. The Clean Air Act requires permit holders to periodically certify that the facility is in compliance and to "report deviations to the permitting authority." 42 U.S.C. § 7661b(b)(2). *Deviation* is defined as any situation in which an emissions unit fails to meet a permit term or condition, or where emissions exceed an emission limitation or standard. 40 C.F.R. § 71.6(a)(3)(iii)(C). Defendants submitted their "Excess Emission Reports," also called "Deviation Reports" to the TCEQ. Doc. 86-6 at 3 (Glacken decl. ¶ 4). Defendants reliance on a single sentence from these regulations –

---

[3] *See,* Doc. 86 at 33-42. Defendants' Statements 15 and 16 mis-state the law. Statement 16 states a legal conclusion (that "many deviations are not violations"). Statements 20, 21, and 23 state legal conclusions and mis-state facts. Statement 22 is a factual dispute that will be relevant to the issue of remedy, but not liability. Statement 24 is disputed to the extent that TCEQ could not have found that "an EPA-approved affirmative defense applies" to events that occurred *before* EPA ever approved the affirmative defense for inclusion into the Texas State Implementation Plan. Statement 25 is irrelevant as to liability.

3

that "[a] deviation is not always a violation," 40 C.F.R. § 71.6(a)(3)(iii)(C) – does nothing to shield them from liability in this case.

In an effort to promote judicial economy, the Club conservatively assumed that *if* Luminant demonstrates that one violation per hour can be exempted pursuant to the available exemption,[4] then the total number of opacity violations remaining would equal a total of 6,520 violations.[5] Defendants' attempts to manufacture factual disputes as to "which 6,520 occasions" the Club contends are violations is simply recycling their failed Motion to Dismiss argument regarding sufficiency of pre-suit notice. Doc. 86 at 19.

### A. The Affirmative Defense is Not Available for Violations that Happened Before January 10, 2011

The Texas affirmative defense was approved by EPA and became a part of the federally enforceable Texas SIP as of January 10, 2011. 75 Fed. Reg. 68,989 (Nov. 10, 2010). Defendants specifically requested the Fifth Circuit to "back-date" the affirmative defense to 2006, and the Court declined to do so. *Luminant,* 699 F.3d at 448. The *American Cyanamid* case on which Defendants rely is no longer good law, and the courts have unequivocally held that a proposed revision to a SIP has no legal weight *until* it is finally approved by the EPA.[6] In addition, EPA

---

[4] *See* 30 TEX. ADMIN. CODE §111.111(a)(1)(E).

[5] Contrary to Defendants' erroneous contention that the Clean Air Act only imposes penalties "per day" and not for each violation of the 6-minute opacity standard (Doc 86 at 13 n.6), it is well-settled that the Act's penalty provision was amended in 1990 to allow the commencement of civil actions "to assess and recover a civil penalty of not more than $25,000 *per day for each violation.*" *United States v. Anthony Dell'Aquilla, Enters. & Subsidiaries*, 150 F.3d 329, 337 (3d Cir. 1998) (internal quotes removed) (citing 42 U.S.C. § 7413(b)).

[6] *United States v. Marine Shale Processors*, 81 F.3d 1329, 1337 n.3 (5th Cir. 1996) ("We note that one of the cases upon which MSP relies for its argument, *Am. Cyanamid Co. v. EPA*, 810 F.2d 493 (5th Cir.1987), may no longer be good law after *General Motors*. See 496 U.S. at 536 n. 1, 110 S.Ct. at 2531 n. 1."); *See General Motors Corp. v. United States*, 496 U.S. 530, 540-541 (1990) ("There can be little or no doubt that the existing SIP remains the 'applicable implementation plan' even after the State has submitted a proposed revision."). *See also, St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., LLC*, 399 F.Supp.2d 726, 734 (E.D.

was clear when it approved the affirmative defense, that the then-existing SIP contained no affirmative defense.  *See* 75 Fed. Reg. at 68,993 ("[T]he existing SIP does not contain affirmative defense provisions that provide relief in an action for penalties for any period of excess emissions."). Defendants had fair warning, at least since 2005, when the then-existing provisions of the Texas SIP were set to expire, that: "Upon expiration of the provisions, *all emissions in excess of applicable emission limitations during SSM activities remain violations* of the Texas SIP, subject to enforcement action by the State, EPA or citizens." 70 Fed. Reg. 16,129, 16,131 (Mar. 30, 2005) (emphasis added).  For these reasons, Defendants' argument, which boils down to a complaint that the current situation is simply unfair, should be given no credence.[7]

### B. The Affirmative Defense Applies to Penalties Only, But Not to Injunctive Relief

Defendants misquote the rule by conveniently placing a period where one does not exist.[8] What the rule actually says is that the affirmative defense applies to "all claims in enforcement actions for these events, other than claims for administrative technical orders and actions for injunctive relief, for which the owner or operator proves…" all of the enumerated criteria.  30 TEX. ADMIN. CODE § 101.222(d),(e). Defendants actually conceded this point in their briefing before the Fifth Circuit. Principal Brief of Petitioners Luminant Generation Co. et al. at 31, *Luminant Generation Co. v. U.S. EPA*, 699 F.3d 427 (5th Cir. 2012) (No. 10-60934), 2011 WL 2000032 at *31. Ex. 1.

---

La. 2005) (A proposed revision to a state's implementation plan under the CAA has no legal weight until it is finally approved by the Environmental Protection Agency).

[7] *See,* Doc. 86 at 18 (referring to Plaintiff's argument as seeking only to "take advantage of EPA's regulatory delay").

[8] Defendants erroneously claim that EPA approved a rule providing a defense to "all claims in enforcement actions[.]" [sic] Doc. 86 at 12.

5

The Fifth Circuit confirmed that the rule would neither shield violators from liability, nor negate district courts' role in enforcing the federal Clean Air Act. *Luminant,* 699 F.3d at 435-36, 440. EPA was also clear on this point. *See* 75 Fed. Reg. at 68,989-69,001 ("Moreover, even where an affirmative defense is successfully raised in defense to an action for penalties, it does not preclude other judicial relief that may be available, such as injunctive relief or a requirement to mitigate past harm or to correct the non-compliance at issue. The commenters are incorrect that the affirmative defense limits injunctive relief. The affirmative defense is only available in an action for penalties and would not be available to a claim requesting injunctive relief.").

### C. That TCEQ Failed to Take Enforcement Action Does Not Negate, But Rather Heightens, This Court's Role in Redressing the Violations

Defendants contend that all of the violations upon which the Club seeks summary judgment "were . . . determined by TCEQ . . . to satisfy the demonstration criteria in § 101.222(d) & (e) and thus found not to be violations" and that "TCEQ's regulatory findings create a genuine issue of material fact on liability." Doc. 86 at 15, 16. Both arguments fail as a matter of law for the reasons explained above. In addition, the purpose of the Clean Air Act's citizen suit provision, 42 U.S.C. § 7604, is to provide a mechanism for enforcing the law precisely in situations like this, where the government regulators cannot or will not command compliance. *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.,* 484 U.S. 49, 62 (1987).[9] In *St. Bernard Citizens for Environmental Quality, Inc. v. Chalmette Refining, LLC*, 399 F.Supp.2d 726, 733 (E.D. La. 2005), a district court rejected the defendant's similar "argu[ment] that the Court should essentially ignore these clearly established permit violations because the LDEQ [state environmental agency] has declared that the reported violations are not actually violations." *See also,* 78 Fed. Reg. 12,460, 12,506 (Feb. 22, 2013) (noting that "excess

---

[9] *See also, Baughman v. Bradford Coal Co., Inc.*, 592 F.2d 215, 218 (3d Cir. 1979).

6

emissions above the level of the applicable emission limitation must be considered violations, whether or not the state elects to exercise its enforcement discretion.").

Defendants' misplaced reliance on superseded EPA policy guidance for the proposition that "startup and shutdown excess emissions *need not be treated as a violation*" is meritless. Doc. 86 at 14 n.8. Here, Defendants selectively cite to EPA's *1983* policy memo,[10] while failing to mention, as the Fifth Circuit recognized, that EPA has long since clarified that it "views all excess emissions as violations. . . . Nevertheless, . . . imposition of a penalty for sudden and unavoidable malfunctions . . . may not be appropriate.").[11] EPA's most current policy memo on this issue states the Agency's long-standing position that exceedences of emission limits during periods of startup, shutdown, and malfunction "constitute violations" and that "an affirmative defense provision *does not negate the fact that excess emissions during a qualifying event are violations of the applicable emission limitations of the SIP*."[12]

Defendants' contention that the TCEQ's "determinations" that the "demonstration criteria" were met is unconvincing. Doc. 86 at 14-15, 16-17. The federal Clean Air Act does not make "state official[s] the unilateral arbiter of whether the excess emissions in a given event constitute a violation." 78 Fed. Reg. at 12,506 (noting that "excess emissions above the level of the applicable emission limitation must be considered violations, whether or not the state elects to exercise its enforcement discretion."); *Luminant,* 699 F.3d at 427 ("Additionally, the

---

[10] Mem. of Kathleen Bennett, "Policy on Excess Emissions During Startup, Shutdown, Maintenance, and Malfunctions" (Feb. 15, 1983).

[11] *Luminant,* 699 F.3d at 434 n.8 (citing EPA's September 20, 1999 policy memo regarding excess emissions during malfunctions, startup, and shutdown).

[12] ENVTL. PROT. AGENCY, MEMORANDUM TO DOCKET FOR RULEMAKING EPA-HQ-OAR-2012-0322, STATUTORY, REGULATORY, AND POLICY CONTEXT FOR THIS RULEMAKING at 9 (2013), *available at* http://www.epa.gov/air/urbanair/sipstatus/docs/ssm_memo_021213.pdf ("From the outset, the EPA has explained that excess emissions are violations, even in the case of unforeseen malfunctions."); *id.* at 11 ("excess emissions during SSM events are violations"); *See also, id.* at 13-15. Attached as Ex. 2.

availability of the affirmative defense does not negate the district court's jurisdiction to assess civil penalties using the criteria outlined in section 7413(e)…").

Defendants have thus presented nothing to establish they meet each of the affirmative defense criteria; instead, they ask this Court to accept the TCEQ's unsubstantiated legal conclusions that the affirmative defense applies and that the exceedences are not violations. Unsubstantiated legal conclusions are insufficient to defeat a motion for summary judgment. *Clark v. Am.'s Favorite Chicken Co.,* 110 F.3d 295, 297 (5th Cir. 1997). *See Sullivan v. Dollar Tree Stores, Inc.,* 623 F.3d 770, 777 (9th Cir. 2010) (holding that "[Department of Labor] Report's legal conclusion . . . does not create a genuine issue of material fact.").

## II. Sierra Club Has Demonstrated Standing as a Matter of Law

Defendants do not dispute that if Club member Barbara Lawrence has an individual right to bring this suit, then the Club has associational standing. Ms. Lawrence's declaration establishes that she has suffered an injury-in-fact that is fairly traceable to the Big Brown power plant and redressable by this lawsuit.

Ms. Lawrence moved to her current home to live "in an area with clean air and to enjoy an outdoor lifestyle," with the "main attraction" being a large reservoir and the fishing it offers. Doc. 25-19 ¶¶ 4,7. Instead of air that is as "clean and clear as possible," she has observed "smoke and soot" from the power plant. She lives near the plant and, due to the excess opacity and particulate matter emissions, is "compelled to breathe air less pure than that mandated by the Clean Air Act." Doc. 75 at 8 (citing *Texans United for a Safe Econ. Educ. Fund v. Crown*, 207 F.3d 789 (5th Cir 2000)). *See also NRDC v. EPA*, 507 F.2d 905, 910 (9th Cir. 1974). The Court's inquiry can stop there, as breathing contaminated air is surely an injury sufficient to confer standing in this Clean Air Act citizen suit. In addition, Ms. Lawrence suffers precisely the sort of recreational and aesthetic harms courts routinely recognize as concrete injuries sufficient for

8

standing.[13] For example, she is reasonably concerned that mercury pollution from Big Brown (which is emitted from the smokestacks along with particulate matter) will adversely impact her recreational activities. *See Cedar Point Oil*, 73 F.3d at 556 ("Whether the affiants were concerned or believed or knew to a moral certainty that produced water would adversely affect their activities on the bay is a semantic distinction that makes little difference in the standing analysis. The requirement that a party demonstrate an injury in fact is designed to limit access to the courts to those who have a direct stake in the outcome, as opposed to those who would convert the judicial process into no more than a vehicle for the vindication of the value interests of concerned bystanders. Sierra Club affiants are concerned, but they are not mere bystanders.") [internal cites and quotation marks omitted]. Under *Cedar Point*, Sierra Club clearly need not prove that the illegal emissions directly harm Ms. Lawrence's health to show she has a "direct stake" in the outcome.

### A. Defendants Have Raised No Genuine Dispute as to Standing

None of Defendants' alleged facts defeat the Club's legal standing to bring this suit. *See,* Doc. 86 at 31-32 (Statements 4-9). First, it is irrelevant for the purposes of demonstrating standing whether Ms. Lawrence lives "directly" in the path of the "predominant" winds (although Defendants' offer further proof that Ms. Lawrence does). Second, as discussed below, whether or not the area around Big Brown is deemed to be in compliance with the National Ambient Air Quality Standards ("NAAQS") for particulate matter has no bearing on this

---

[13] *See, e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Services*, 528 U.S. 167, 183 (2000) ("environmental plaintiffs adequately allege injury in fact when they aver that they use the affected area and are persons for whom the aesthetic and recreational values of the area will be lessened by the challenged activity."); *Sierra Club v. Cedar Point Oil Co.*, 73 F.3d 546, 556-58 (5th Cir. 1996); *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 160-61 (4th Cir. 2000).

lawsuit.[14] Third, Plaintiff is not required to establish a "reliable direct correlation between opacity and PM emissions" to prevail on its opacity claim. Regardless, Luminant's own permit states that opacity is a surrogate for PM, and opacity is routinely correlated with PM emissions. Fourth, the existence of other local industrial sources – all of which are dwarfed by the power plant – is irrelevant to whether Ms. Lawrence has standing to sue for the power plant's illegal emissions.

<u>Injury-in-Fact.</u>   "[T]he threshold for the injury requirement [for standing in an environmental citizen suit] is fairly low." *Sierra Club, Lone Star Chapter v. Cedar Point Oil*, 73 F.3d 546, 557 n.23 (5th Cir. 1996) (Clean Water Act citizen suit case). Defendants make three unpersuasive arguments as to why Ms. Lawrence's standing-related injuries are insufficient. They argue that her concerns are too speculative, that she suffers no injury because the area around her home complies with the NAAQS and that new expert testimony raises a question as to whether Big Brown's excess emissions "threatened the PM NAAQS at her residence or posed a health threat." Doc. 86 at 10.

First, contrary to Defendants' argument, *Central & Southwest Services, Inc. v. EPA*, 220 F.3d 683 (5th Cir. 2000), reinforces Ms. Lawrence's standing. The *Central* court found that the Sierra Club lacked standing to challenge *an EPA rule* because the witnesses were not "directly" impacted where they had not established that hazardous wastes disposed of in the town's landfill *could ever* contaminate the witnesses' drinking water and that the witnesses' concern about disposal of hazardous waste as roadbed was "predicated upon the occurrence of a string of future

---

[14]  72 Fed. Reg. 20,586-01, 20,587 (Apr. 25, 2007); 70 Fed. Reg. 65,983, 65,988 (Nov. 1, 2005) ("emissions reductions resulting in reduced concentrations below the level of the standards may continue to provide additional health benefits to the local population."); 71 Fed. Reg. 2620, 2635 (Jan. 17, 2006) (EPA unable to find evidence supporting the selection of a threshold level of fine particulate matter ($PM_{2.5}$) under which death and disease associated with such PM would not occur at the population level).

10

hypotheticals" involving uncertain actions of third parties. *Id*. at 700-701. In this lawsuit (which does not involve a rulemaking challenge), Ms. Lawrence's injuries are not speculative, because the power plant actually exists and emits air contaminants in the area where Ms. Lawrence lives and breathes. Defendants have conceded that the wind blows the power plant's smokestack emissions in the direction of Ms. Lawrence's home at least some of the time. Paine Decl.¶9. Thus, Ms. Lawrence clearly has a "direct stake in the outcome" of this lawsuit. *Id.* at 700.

Second, whether or not the area around the power plant meets the NAAQS is irrelevant to Ms. Lawrence's standing. This lawsuit alleges the Defendants violated limits on their power plant's smokestack emissions, not that Defendants violated the NAAQS. Regardless, Congress recognized that an "adverse effect" on public health may occur, "*notwithstanding attainment* and maintenance of all national ambient air quality standards." 42 U.S.C. § 7470 (emphasis added).[15] EPA has also concluded that there is no convincing evidence that PM exposure at any level is safe for humans. 72 Fed. Reg. 20,586, 20,587 (Apr. 25, 2007). *Texans United* and similar cases do not hold that only breathing air with pollution levels that exceed the NAAQS causes injury. Rather, breathing air less pure than it would be if Defendants complied with the Act is injury enough. *See, e.g.*, *Coal. for Clean Air v. VWR Intern., LLC*, __F.Supp.2d__, 2013 WL 486287, at *8 (E.D.Cal. Feb. 6, 2013) (individual "compelled to breathe air" near plant that violated SIP-approved rule had standing).

Third, rather than creating a genuine dispute of fact, Defendants' expert affidavit confirms that air emissions from Big Brown reach Ms. Lawrence's residence. Doc. 86-5 ¶9. In addition, Defendants concede that opacity exceeded the allowable limit on 117 days for boiler

---

[15] *See also Hawaiian Elec. Co. v. U.S. Envtl. Prot. Agency*, 723 F.2d 1440, 1447 (9th Cir. 1984) (The NAAQS "do not adequately protect against genetic mutations, birth defects, cancer, or diseases caused by long-term chronic exposures or periodic short-term peak concentrations….").

11

No. 1 and 111 days for boiler No. 2. Doc. 86-6 at 25, 36. Thus, even assuming Mr. Paine's incorrect premise that Ms. Lawrence can *only* be impacted when the wind is blowing directly from the southeast (and putting aside that Ms. Lawrence drives around her community, including past the power plant where she observes smoke) there are – even under Defendants' erroneous theory – days on which excess opacity levels result in air pollution at Ms. Lawrence's home. Sierra Club submits with this brief additional expert testimony related to this issue simply to demonstrate that, even if all of Mr. Paine's assumptions were correct, his testimony does nothing to rule out the harmful effects that the power plant's violations have on Ms. Lawrence's neighborhood. Ex. 3 (Declaration of Dr. H. Andrew Gray). Regardless, the Club need not prove that Big Brown threatens the NAAQS at Ms. Lawrence's residence, or that the emissions cause a health threat because requiring such a showing would "raise the standing hurdle higher than the necessary showing for success on the merits." *Laidlaw*, 528 U.S. at 181-83; *see also Pound v. Airosol Co.,* 498 F.3d 1089, 1097 (10th Cir. 2007) (Clean Air Act imposes strict liability for violations);[16] *Friends of the Earth*, 204 F.3d at 158.

Fairly Traceable. Defendants erroneously argue that Ms. Lawrence cannot possibly be injured by opacity violations. The Club need not establish tort-like causation nor pinpoint the exact times of violations and link Ms. Lawrence's injuries to permit violations at those times. *Concerned Citizens Around Murphy v. Murphy Oil USA, Inc.*, 686 F. Supp. 2d 663, 671 (E.D. La. 2010) (citing *Texans United,* 207 F.3d at 792-93). Rather, Sierra Club "may satisfy the traceability requirement by presenting only circumstantial evidence that a 'pollutant causes or contributes to the kinds of injuries alleged.'" *Concerned Citizens Around Murphy,* 686 F. Supp.

---

[16] That the CAA is a strict liability statute also defeats Defendants' erroneous argument that the Club must prove causation as to the opacity claim. Doc. 86 at 23. *See* United States v. Anthony Dell'Aquila, Enters. and Subsidiaries, 150 F.3d 329, 332 (3rd Cir. 1998); United States v. B & W Inv. Props., 38 F.3d 362, 364, 368 (7th Cir. 1994).

2d at 671-2 (quoting *Comer v. Murphy Oil USA*, 585 F.3d 855, 866 (5th Cir. 2009)); *Friends of the Earth, Inc.*, 204 F.3d at 161. Ms. Lawrence has observed smoke from the stacks and Mr. Paine himself confirms that the wind blows toward her house at times. Her aesthetic interests are directly harmed by having to view smoke and soot from the plant as opposed to air that is clean and clear. In a similar case, members who lived and recreated near a coal-fired power plant were injured by the plant's failure to comply with a 20 percent opacity standard and sulfur dioxide violations because these violations "impaired the ability of [the] members to breathe clean air and view natural scenery and wildlife." *See Sierra Club v. Tri-State Generation & Transmission Assoc.,* 173 F.R.D. 275, 280 (D. Colo. 1997). Luminant has itself represented, and this Court has recognized, that opacity is a measure of particulate matter. *See* Doc. 11 at 18 (citing Doc. 1-3 at 44)[17]; Doc. 75 at 2 (opacity is a measure of soot).  *See, also, Alabama Envtl. Council v. EPA*, __F.3d. __, 2013 WL 810707 (March 6, 2013) (citing *Sierra Club v. Tenn. Valley Auth.,* 430 F.3d 1337, 1341 (11th Cir. 2005)).[18]

Redressability.  A favorable decision would redress Ms. Lawrence's injuries. If plaintiff prevails, the Defendants will be required, among other remedies, to comply with the opacity limit.  Doing so will result in less visible emissions, which is an aesthetic interest.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Services*, 528 U.S. 167, 183 (2000).   Complying with the opacity limit will also mean less soot, or particulate matter, drifting towards Ms. Lawrence's home.

### B. The Court Should Deny Defendants' Rule 56(d) Request

To justify a delay of summary judgment pursuant to Rule 56(d), the party seeking more

---

[17] Defendants' Title V Permit provides that opacity is the "Compliance Assurance Monitoring," ("CAM") indicator for PM limits. *See also,* Ex. 4 (Stack Test Report, Bates No. LUM-88-021989) (FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER).

[18] Defendants cite an EPA statement that determining the *exact* correlation between opacity and PM at a given facility requires site-specific information. In that same rulemaking, EPA notes that opacity is "likely to reflect impacts on the ambient PM levels," and refers to opacity as a "proxy" for PM. 72 Fed. Reg. 18,428, 18,430, 18,432 (Apr. 12, 2007).

time for discovery must set forth a "plausible basis for believing that specified facts . . . probably exist and indicate how emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Raby v. Livingston,* 600 F.3d 552, 561 (5th Cir.2010). The party must also show that it did not delay in seeking discovery. *Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 606 (5th Cir. 2001). A party "suspends discovery at his own risk." *Id*.

Defendants fail to meet their burden under these standards. First, none of the additional discovery that Defendants claim to be seeking will influence the outcome of this motion. *See* Gidiere Decl. ¶4 (listing discovery needs). The only "specified facts" Defendants have identified that they have not yet obtained are the medical records of Ms. Lawrence and her husband. Gidiere Decl. ¶6.  Even if the Club resolved its valid objections and provided medical records, nothing Defendants might discover in those records could defeat standing. *See supra* and Pl. Resp. to Mot. to Strike Lawrence Dec. (Part I). Sierra Club does not need to prove that Ms. Lawrence's health or that of her husband has been injured by Big Brown's pollution. *Id.* Nor would further discovery into the topics in the Alexander declaration defeat summary judgment. *See* Pl. Resp. to Mot. to Strike Alexander Decl.

Defendants also claim to need discovery of Dr. Neil Carman as to whether other Sierra Club members are harmed.  Whether or not other Sierra Club members are injured and would meet the legal test for standing has no bearing on whether or not the Club has demonstrated standing based on the current record before the Court.  Moreover, the Club offered to produce Dr. Carman for a deposition in February, but Defendants declined to follow up on this. *See* Ex. 5 (Declaration of Elena Saxonhouse). Lastly, Defendants seek discovery of any experts Sierra Club intends to offer regarding opacity. Gidiere Decl.¶4.  But for purposes of partial summary judgment, Sierra Club has not offered expert testimony on opacity. As Defendants have failed to

14

specify any facts likely exist that would influence the outcome of the pending motion, the Court must deny their request. *McFaul v. Valenzuela*, 684 F.3d 564, 580 (5th Cir. 2012). The Court has additional grounds to deny Defendants' request based on their failure to pursue the discovery they claim to still need, despite ample opportunity. *See* Saxonhouse Decl. *See, e.g.*, *Mendez v. Caterpillar, Inc.*, No. SA-09-CA-978-XR, 2011 WL 6999659, at *21 (W.D. Tex. Oct. 16, 2011); *see also, e.g.*, *Moody v. Aqua Leisure Int'l*, No. H-10-1961, 2012 WL 1015955, at *4-5 (S.D. Tex. Mar. 22, 2012); *Gulf Restoration Network v. Hancock Cnty. Development, LLC*, 2011 WL 482520, at *2 (S.D. Miss., Feb. 3, 2011) (denying Rule 56(d) motion in similar circumstances, where partial summary judgment motion had been pending for six months and the moving party had not been diligent in seeking discovery related to standing).

## CONCLUSION

For the reasons stated herein, and based on the record before the Court, Plaintiff Sierra Club requests a ruling that Defendant Luminant is liable for 6,520 self-reported violations of the 30 percent opacity limit applicable to its Big Brown power plant.

Dated: March 25, 2013               Respectfully submitted,

　　　　　　　　　　　　　　　　　   /s/ Ilan Levin

ENVIRONMENTAL INTEGRITY PROJECT
Ilan Levin*
Texas Bar No. 00798328
1303 San Antonio Street, Suite 200
Austin, Texas 78701
Phone: 512-637-9477
Fax: 512-584-8019

Julie Kaplan*
DC Bar No. 414178

One Thomas Circle, NW, Suite 900
Washington, D.C. 20005
Phone: 202-263-4452
Fax: 202-296-8822

Patton Dycus*
Georgia Bar No. 236636
2532 Knox Street NE
Atlanta, GA 30317
Phone: 404-446-6661

SIERRA CLUB
Elena Saxonhouse*
California Bar No. 235139
Sanjay Narayan*
California Bar No. 183227
85 Second Street, 2nd Floor
San Francisco, CA 94105
Phone: 415-977-5765

**ATTORNEYS FOR PLAINTIFF**

*Admitted *pro hac vice*

## **CERTIFICATE OF SERVICE**

On this 25th day of March 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

                                        /s/ Ilan Levin
                                          Ilan Levin

William B. Dawson
Russell H. Falconer
Gibson, Dunn, & Crutcher LLP
2100 McKinney Avenue
Suite 1100
Dallas, Texas 75201-6912

P. Stephen Gidiere III
Thomas L. Casey, III
Michael D. Freeman
Balch & Bingham LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, Alabama 35203

Charles D. Olson
Michael W. Dixon
Haley & Olson PC
510 North Valley Mills Drive, Suite 600
Waco, Texas 76710-6078

Stacey H. Dore
Energy Future Holdings Corp.
1601 Bryan Street, 41st Floor
Dallas, Texas 75201