

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SIERRA CLUB,<br>    Plaintiff, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. W-12-CV-108 |
| ENERGY FUTURE HOLDINGS<br>CORPORATION and LUMINANT<br>GENERATION COMPANY LLC.,<br>    Defendants. | §<br>§<br>§<br>§<br>§ | |

## ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment.[1] The Court partially ruled on the motion, but reserved judgment on the issue of standing. After reviewing the motion, the parties' supplemental briefs and responses, and applicable law, the Court now **GRANTS** Plaintiff's motion for partial summary judgment on standing.

### I.   Factual and Procedural History

Defendants own and operate a coal-fired electric generating plant, located in Freestone County, Texas, known as "Big Brown Plant." The plant's two units generate electricity with a blend of coal. The electricity generated is supplied to 23 million Texas customers via the electric grid operated by the Electric Reliability Council of Texas ("ERCOT").

The Big Brown Plant is required to operate under a permitting process that limits the amount of pollutants that the plant may legally emit into the air. One

---

[1] Doc. 25.

measurement of air pollutants is opacity. Opacity is an indicator of the excessive levels of particulate matter ("PM") pollution being emitted by a facility. PM is a mixture of small particles that can include organic chemicals, metals, and ash. Essentially, opacity measures the level of soot in the facility's exhaust. Texas rules define opacity as the "degree to which an emission of air contaminants obstruct the transmission of light expressed as a percentage of light obstructed as measured by an optical instrument or trained observer." 30 TEX. ADMIN. CODE § 101.1(72). The higher the opacity, the less light that passes through a plume of air pollution.

The Clean Air Act ("CAA") requires that each state submit a State Implementation Plan ("SIP") to the Environmental Protection Agency ("EPA") for approval. 42 U.S.C. § 7210. Under the Texas SIP, power plant opacity "shall not exceed 30 percent averaged over a six-minute period." 30 TEX. ADMIN CODE § 111.111(a)(1)(A).[2] Additionally, emissions may not exceed "0.3 pound of total suspended particulate per million [British thermal units ("Btu")] heat input, averaged over a two-hour period."[3] 30 TEX. ADMIN CODE § 111.153(b). However, Big Brown Plant is permitted to exceed the opacity limit for up to six minutes in any sixty consecutive minutes for "cleaning of a firebox or the building of a new fire, soot blowing, equipment changes, ash removal, and rapping of precipitators." 30 TEX. ADMIN CODE § 111.111(a)(1)(E).

---

[2] The opacity limit has been approved by the EPA. *See* 40 C.F.R. § 52.2270(c); 61 Fed. Reg. 20,732, 20,734 (May 1996) (approving the 30 percent opacity limit into the Texas SIP).
[3] EPA approved this standard as an applicable requirement of the Texas SIP. 74 Fed. Reg. 19,144 (Apr. 28, 2009) (approving 30 TEX. ADMIN. CODE § 111.153(b) into the Texas SIP).

2

Plaintiff pleads that according to Defendants' self-reported data, Big Brown Plant violated the 30 percent opacity limit on 6,520 occasions between July 2007 and December 2010 in violation of the Texas SIP, the Defendants' Title V permit, and the Clean Air Act. Plaintiff alleges the violations at times exceeded 90 percent opacity, more than triple the plant's legal limit. Furthermore, Plaintiff maintains that the Big Brown Plant violated the PM limits outlined in the Texas SIP. Plaintiff states that using the Defendants' self-reported heat input and sulfur dioxide emissions data, the Defendants have violated the PM limit on at least 370 occasions between January 2008 and July 2011. In arriving at the aggregate number of violations, Plaintiff states it has assumed Defendants have utilized their one exemption per hour.

In their Partial Motion for Summary Judgment, Plaintiff contends that there is no genuine issue of material fact with respect to standing. Plaintiff argues that it satisfied all the requirements for constitutional standing, and the Court should find that Plaintiff has standing to pursue the instant lawsuit. Defendants disagree and claim that the evidence submitted by Plaintiff is insufficient to satisfy the requirements for standing. Since genuine issues of material fact exist, Defendants argue that summary judgment on the issue of standing would be improper.

II.    **Standard of Review**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED.

R. CIV. P. 56(a).  The movant is entitled to summary judgment if, after an adequate time for discovery, the non-movant fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant must initially demonstrate the lack of evidence supporting the non-movant's case. *See id.* at 323. The burden then shifts to the non-movant to present some evidence showing that there is a genuine issue for trial. *See id.* at 324.

A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the non-movant." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Because that issue cannot be resolved without reference to "the criteria governing what evidence would enable the jury to find for [the non-movant]," the Court "must view the evidence presented through the prism of the substantive evidentiary burden." *See id.* at 254. However, in making this determination, the Court may not weigh the evidence or evaluate the credibility of the witnesses. *See id.* at 255. Instead, it must view all facts in the light most favorable to the non-movant and make all justifiable inferences in her favor. *See id.* As such, to prevail on summary judgment, the movant cannot simply rely on allegations, but must produce affidavits or other evidence satisfying each element of standing. *See Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 115 n. 31 (1979).

## III. The Standing Issue

Standing is "built on a single basic idea—the idea of separation of powers." *Allen v. Wright,* 468 U.S. 737, 752 (1984). Standing is an essential part of the case-or-controversy requirement of Article III of the Constitution. *See* U.S. CONST. art. III, § 2; *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). As such, the standing inquiry addresses whether a plaintiff's claims are appropriately resolved by the court. *Warth v. Seldin,* 422 U.S. 490, 498 (1975). Standing implicates the court's jurisdiction and must be addressed before determining whether the plaintiff has adequately stated claims against defendants. *Ramming v. United States,* 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. This requirement prevents a court without jurisdiction from prematurely dismissing a case with prejudice.").

An association has standing to bring suit on behalf of its members when: (1) one or more of the organization's members would otherwise have standing to sue in their own right; (2) the interests it seeks to protect are germane to the organization's purpose; and (3) neither the claim asserted nor the relief requested requires the participation of individual members. *Hunt v. Wash. St. Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977); *Friends of the Earth, Inc. v. Chevron Chem. Co.,* 129 F.3d 826, 827–28 (5th Cir. 1997). An association's members have standing to sue if they: (1) suffer an injury in fact; (2) that is

5

traceable to the defendant's challenged conduct; and (3) that is likely to be redressable by the favorable decision in the district court. *Lujan,* 504 U.S. at 560. The citizen provision under the CAA authorizes "any person" to "commence a civil action on his own behalf against any person...who is alleged to have violated...or to be in violation of...an emissions standard or limitation under this chapter...." 42 U.S.C. § 7604(a). It is well-established that associations like the Sierra Club are authorized to pursue lawsuits under the CAA on behalf of its members. *See Texans United for a Safe Econ. Educ. Fund v. Crown Cent. Petroleum Corp.,* 207 F.3d 789, 792 (5th Cir. 2000). The issue before the Court is whether a member of Plaintiff has constitutional standing to pursue this case in her own right.

Plaintiff asserts its standing by and through its member, Barbara Lawrence. Lawrence and her husband live approximately ten miles northwest, as the crow flies, from the Big Brown Plant. In her sworn declaration, Lawrence claims that she and her husband moved to their current home for retirement, "because [they] wanted to live in a rural area with clean air and to enjoy an outdoor lifestyle."[4] She also contends that she drives into town "three to four times a week" and will "frequently observe smoke and soot coming out of the stacks of Big Brown."[5] Given her home's close proximity to the Richland Chambers Reservoir, Lawrence and her family "frequently" visit and fish the

---

[4] Doc. 161, Ex. 1 at 2.
[5] *Id.*

lake.[6]  Based on her observations of smoke emanating from the stacks of Big Brown, Lawrence claims that she is "concerned about the health hazards of the particulate matter pollution being emitted."[7]  Lawrence notes that since moving to the area, her husband has developed respiratory problems requiring the use of oxygen.  In her deposition, Lawrence adds that she is unable to enjoy the outdoor recreational amenities of her home with her husband because his breathing problems get aggravated when he goes outdoors.[8]  She is also concerned about having her grandchildren visit and potentially breathing in the polluted air from Big Brown.[9]

### A. Injury-in-Fact

Defendants first argue that Lawrence failed to specifically assert any injury that could be caused by opacity or PM violations.  Though Lawrence does claim she is affected by the emissions expelled from the stacks of Big Brown, Defendants contend that Lawrence's "injury" is insufficient to confer standing.  Furthermore, according to Defendants, any reference to her husband's respiratory problems cannot be considered as it is not an injury attributed directly to Lawrence.  Defendants also disputes any injury linked to Lawrence's observations of emissions from the Big Brown Plant.

"The requirement that a party demonstrate an injury in fact is designed to limit access to the courts to those who have a direct stake in the outcome, as

---

[6] *Id.*
[7] *Id.*
[8] Doc. 179, Ex. 1, Barbara Lawrence Deposition at 141-42.
[9] Doc. 161, Ex. 1 at 2.

7

opposed to those who would convert the judicial process into no more than a vehicle for the vindication of the value interests of concerned bystanders." *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 556 (5th Cir. 1996) (citing *Valley Forge Christian College v. Ams. United for Separation of Church and State, Inc.*, 454 U.S. 464, 473 (1982) (internal citations omitted)). Even still, the Fifth Circuit recognizes the "low threshold for sufficiency of injury." *Save Our Cmty. v. U.S. E.P.A.*, 971 F.2d 1155, 1161 (5th Cir. 1992). The injury asserted need not be large or extensive, as an "identifiable trifle" will suffice. *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.19 (1973).

In light of this low injury threshold, a plaintiff can demonstrate injury-in-fact when her "reasonable concerns" about the discharges of a facility "directly affects" her recreational, aesthetic, and economic interests. *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs., Inc.*, 528 U.S. 167, 183-84 (2000). In *Laidlaw*, an affiant claimed that he occasionally drove over a river next to the defendant's facility that "looked and smelled polluted." *Id.* Believing that the water was polluted by the defendants, the individual curtailed his visits and use of the river. *Id.* Finding the standing requirements satisfied, the Supreme Court held that this affidavit was sufficient evidence to demonstrate an injury-in-fact. The Fifth Circuit also held that affidavits from individuals "breathing and smelling polluted air is sufficient to demonstrate injury-in-fact and thus confer standing under the CAA."

*Texans United*, 207 F.3d at 792 (citing *N.R.D.C. v. E.P.A.*, 507 F.2d 905, 910 (9th Cir. 1974)).

Lawrence claimed that she frequently saw smoke coming from the stacks of the Big Brown Plant. Though she cannot see the stacks from her home, Lawrence can see the stacks while driving to and from her home and the nearby town. She also avers that the emissions from Big Brown harmed the aesthetic appeal of living near a lake, which is known for its outdoor and recreational attractions. As the observation of smoke, which can be linked to opacity and PM violations, is an aesthetic injury, Lawrence's sworn declarations and deposition testimony is suitable evidence of an injury-in-fact to establish standing.

Defendants also take issue with Lawrence's concerns surrounding the health of her husband. While Defendants are correct that a party cannot assert the injuries of someone else to establish standing, Lawrence has suffered an independent injury through her husband's health. *See Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) (explaining that standing requires the injury be personal to the person bringing suit). In her deposition and declaration, Lawrence averred that she and her husband moved to the area as part of their retirement to enjoy the aesthetic and recreational amenities of the area together.[10] Though Lawrence herself has not experienced any respiratory problems, her husband has. Given Lawrence's reasons for moving to the area – to enjoy the outdoor lifestyle with her husband as part of their retirement – this

---

[10] *See* Doc. 179, Ex. 1, Barbara Lawrence Deposition at 12; 43; 101-03; 141-42.

9

Court also finds that Lawrence's inability to enjoy the outdoors *with* her husband because of her concerns about his health and the emissions of Big Brown, is an injury-in-fact for purposes of standing. Based on the foregoing, the Court concludes that Plaintiff has satisfied the injury-in-fact requirement for standing.

### B. Fairly Traceable

Plaintiff claims that the opacity and PM violations are "fairly traceable" to the injuries sustained by Lawrence. Lawrence lives ten miles downwind from the Big Brown Plant.[11] She is concerned that the smoke emanating from the plant's stacks, which she occasionally observes, is affecting the air quality at her home and the surrounding area. Based on her observations, Lawrence has curtailed her outdoor activities with her husband, and her enjoyment of the aesthetic appeal of the area has diminished.

Defendants do not dispute the fact that during brief and infrequent periods of time, "opacity events" at Big Brown occur; however, these periods occurred less than two percent of the facility's operating time. Defendants argue that the link between Lawrence's alleged injuries and the opacity and PM violations has not been established. Defendants maintain that Lawrence must specifically trace each violation of opacity and PM limits to her injuries. According to Defendants, "Lawrence's health concerns are traceable not to opacity, but to emissions that

---

[11] Meteorological data assessed by Defendants' expert witness confirm that winds predominately blow from the South-Southeast, which places Lawrence's home downwind from the Big Brown Plant. See Doc. 167, Ex. 2, Expert Report of Robert Paine at 34.

10

have nothing to do with opacity."[12] Thus, Defendants argue, concerns about emissions are too broad and insufficient to connect Lawrence's injuries to opacity and PM violations.

To ultimately prevail in its lawsuit, Plaintiff will need to prove causation and explicitly link opacity violations to Lawrence's injuries; however, Defendants cannot conflate the requirements to succeed on the merits with the requirements of Article III standing. *Texans United*, 207 F.3d at 793 (explaining that while the plaintiffs "must ultimately establish causation if they are to prevail on the merits, they need not do so to establish standing"); *see also Pub. Interest Research Group of New Jersey, Inc. v. Powell Duffryn Terminals Inc.*, 913 F.2d 64, 72 (3d Cir. 1990) (noting that the "fairly traceable" requirement for Article III standing is not equivalent to a requirement of tort causation). "[T]he fairly traceable element does not require that the plaintiffs 'show to a scientific certainty that [the] defendant's effluent, and [the] defendant's effluent alone, caused the precise harm suffered by the plaintiffs.' " *Sierra Club, Lone Star Chapter v. Cedar Point Oil Co. Inc.*, 73 F.3d 546, 558 (5th Cir. 1996)(quoting *Save Our Cmty.*, 971 F.2d at 1161). Furthermore, traceability does not require Plaintiff to pinpoint the exact times of each violation to its member's injuries. *See Texans United*, 207 F.3d at 792-93. Plaintiff need only show that Defendants' opacity and PM violations contribute to the type of injuries asserted by Lawrence. *Cedar Point*, 73 F.3d at 558; *see also Natural Res. Def. Council, Inc. v. Watkins*, 954 F.2d 974, 980 (4th

---

[12] Doc. 167 at 11.

Cir. 1992)(the "fairly traceable" element of standing is met when plaintiffs show that a defendant discharges a pollutant that "causes or contributes to the kinds of injuries alleged by the plaintiffs").

Defendants maintain that "Lawrence's health concerns are traceable not to opacity, but to emissions that have nothing to do with opacity."[13] However, such a strict approach to Lawrence's injury is inappropriate for standing determination, and subverts the CAA and a citizen's ability to bring suit for violations of emission standards or limits. 42 U.S.C. § 7604(a). Furthermore, such a position ignores Texas law[14] and contradicts Defendants' own experts.[15] Other than visual obstruction, an actual violation of "opacity" may not cause the health-related injuries Lawrence is concerned about. However, since opacity is the sole measure used to monitor PM emissions,[16] opacity violations can be fairly traced to Lawrence's health concerns for purposes of standing. Additionally, Lawrence did claim that viewing the emissions manifested an aesthetic injury that caused Lawrence and her husband to limit their recreational activities and outdoor enjoyment. *See Sierra Club v. Tennessee Valley Auth.*, 430 F.3d 1337, 1344 (11th Cir. 2005) (citing *Laidlaw*, 528 U.S. at 183-84) (recognizing an injury-in-fact

---

[13] See Doc. 167 at 11.
[14] Texas rules define opacity as the "degree to which an emission of air contaminants obstruct the transmission of light expressed as a percentage of light obstructed as measured by an optical instrument or trained observer." 30 TEX. ADMIN. CODE § 101.1(72).
[15] Doc. 167, Ex. 2, Expert Report of Lucy Frasier at 7-8 (defining "opacity" as the visibility of emissions…"Opacity might directly interfere with a person's use or employment of property, but only if the individual were to view such opacity."); Doc. 167, Ex. 1, Expert Report of Robert Paine at 13 ("Opacity is a measure of the degree to which a substance prevents the transmission of light.").
[16] Doc. 179, Ex. 3, Deposition of Freeman Jarrell - Director of Generation at Big Brown at 169 (to comply with particulate matter limits, "we use opacity as the primary indicator").

of an individual who "regularly saw plumes of smoke from the [coal] plant" and attested that his aesthetic or recreational interests in the area have been harmed). Though opacity also measures non-harmful emissions, that fact issue is beyond the scope of standing analysis, and must be reserved for determination on the merits of the lawsuit.

Defendants next argue that Lawrence failed to prove that she was breathing less than pure air when opacity and PM levels exceeded permissible levels. Additionally, Defendants offered experts who opine that even if Big Brown exceeded its opacity and PM limits, the air quality around Lawrence's home would still comply with national ambient air quality standards ("NAAQS").[17] However, air quality complicit with NAAQS limits does not necessarily negate injury for Article III purposes, as "identifiable trifle" is the proper threshold for injury. *Sierra Club v. Franklin Cnty. Power of Ill.*, 546 F.3d 918, 925-26 (7th Cir. 2008).

To demonstrate traceability, Plaintiff can rely on circumstantial evidence that PM from Defendant's facility, as measured by opacity, "causes or contributes to the kinds of injuries alleged." *Cedar Point*, 73 F.3d at 557; *see also Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 161 (4th Cir. 2000) (en banc) (citation and internal quotation marks omitted) ("Rather than pinpointing the origins of particular molecules, a plaintiff must merely show that a

---

[17] *See* Doc. 167, Ex. 1, Declaration of Robert Paine, ¶¶ 7-8; Ex. 2, Declaration of Lucy Frasier, ¶ 8.

13

defendant discharges a pollutant that causes or contributes to the kinds of injuries alleged in the specific geographic area of concern."). Thus, if opacity violations at Big Brown can impair the air quality around Lawrence's home, even within national limits, an injury, however "trifle," has been established. *Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. at 79 (a "substantial likelihood" that the defendant's conduct caused plaintiff's injury satisfies the "fairly traceable" prong of standing); *see e.g. St. Bernard Citizens for Envtl. Quality, Inc. v. Chalmette Ref., L.L.C.*, 354 F. Supp. 2d 697, 704 (E.D. La. 2005) (granting summary judgment on the issue of standing when the plaintiff demonstrated that there was a "substantial likelihood" that its member's injuries are fairly traceable to the emissions expelled from the defendant's facility). In light of the evidence presented, the Court finds no genuine fact issues to negate Plaintiff's "fairly traceable" assertions.

### C. Redressability

The final prong of standing requires the plaintiff to demonstrate that her injuries are "likely to be redressed by a favorable decision." *Valley Forge*, 454 U.S. at 472. Given the purpose of the CAA "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare," remedies that assure compliance with the Act will properly redress a plaintiff's injuries. *See* 42 U.S.C. § 7401(b)(1). Plaintiff is seeking injunctive and civil penalty remedies against Defendants on behalf of Lawrence. Plaintiff argues

that the Court's potential judgment mitigating, enjoining, or deterring CAA violations will redress Lawrence's injuries. Defendants disagree.

Since any civil penalty awarded in this case would go straight to the United States, Defendants argue that such an award will not directly redress Lawrence's injuries. Moreover, Defendants would be shielded from liability through its affirmative defenses under the Texas SIP. Defendants lastly maintain that there is no support for injunctive relief as there is no threat of future unlawful conduct to prevent.

Injunctive relief is an appropriate remedy to redress the injuries of a plaintiff if it effectively deters and abates the illegal conduct of the defendant. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 108 (1998). A judgment awarding civil penalties to the United States will also redress a plaintiff's injuries "to the extent that they encourage defendants to discontinue current violations and deter them from committing future ones." Laidlaw, 528 U.S. at 186. In the instant case, Defendants have not altered the operations at Big Brown, and are taking no actions to change its current conduct with respect to opacity and PM limits.

Though relying on its affirmative defenses and its claim that the opacity events are lawful, Defendants are attempting to litigate its liability issue on the merits. Pantry, Inc. v. Stop-N-Go Foods, Inc., 796 F. Supp. 1164, 1167 (S.D. Ind. 1992) ("Whether a defense counters directly the elements of a claim or otherwise excuses liability (i.e. an affirmative defense), it must be presented and

15

supported when the embracing issue of "liability" is considered for judgment."). However, if the affirmative defenses under the Texas SIP do not apply in the instant case, civil penalties would redress Lawrence's injuries as a means to stop further violations. Additionally, even if the affirmative defenses shield Defendants from financial liability, Defendants can still be enjoined from operating under its current opacity and PM levels, should Plaintiff succeed on the merits of the underlying lawsuit.

Therefore, Plaintiff has satisfied the redressability prong, as the focus under Article III analysis is on the *ability* of the remedy to redress a plaintiff's injury. Demanding more at this stage of the lawsuit improperly "conflates standing with the merits of the case." *See Booker-El v. Superintendent, Indiana State Prison*, 668 F.3d 896, 899 (7th Cir. 2012).

### IV. Conclusion

Finding all the necessary requirements for Article III standing satisfied, the Court concludes that Plaintiff has standing to bring this lawsuit. Accordingly, it is

**ORDERED** that Plaintiff's request for partial summary judgment on the issue of standing is **GRANTED**.

**SIGNED** this 22<sup>d</sup> day of November, 2013.

_____
WALTER S. SMITH, JR.
UNITED STATES DISTRICT JUDGE