

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SIERRA CLUB,<br>    Plaintiff, | § § § | |
| v. | § § | Civil Action No. W-12-CV-108 |
| ENERGY FUTURE HOLDINGS<br>CORPORATION and LUMINANT<br>GENERATION COMPANY LLC,<br>    Defendants. | § § § § § | |

## ORDER

Before the Court is Defendants' Motion for Partial Summary Judgment as to Plaintiff's Second Cause of Action (Particulate Matter). Defendants request partial summary judgment on the second cause of action pursued by Plaintiff, which focuses on alleged violations of Particulate Matter limits. Having reviewed the motion, response, reply, and applicable law, the Court **GRANTS** Defendants' Motion and dismisses Plaintiff's cause of action with respect to particulate matter violations.

### I.    Factual and Procedural Background

Defendants own and operate a coal-fired electric generating plant, located in Freestone County, Texas, known as Big Brown Steam Electric Station ("Big Brown Plant"). The plant's two units generate electricity with a blend of coal. The electricity generated is supplied to 23 million Texas customers via the electric grid operated by the Electric Reliability Council of Texas ("ERCOT"). Plaintiff Sierra Club pursued a citizen suit under Section 304 of the federal Clean

1

Air Act ("CAA"), 42 U.S.C. § 7604. Plaintiff claims that Defendants violated, and continue to violate two emission limit provisions that apply to Big Brown Plant.

Big Brown Plant is required to operate under a permitting process that limits the amount of pollutants the plant may legally emit into the air. One measurement of air pollutants is opacity. Opacity is an indicator of the excessive levels of particles or other substances being emitted by a facility. Essentially, opacity measures the level of soot in the facility's exhaust. Texas rules define opacity as the "degree to which an emission of air contaminants obstruct the transmission of light expressed as a percentage of light obstructed as measured by an optical instrument or trained observer." 30 TEX. ADMIN. CODE § 101.1(72). In other words, the higher the opacity, the less light that passes through a plume of air pollution.

Another measure of pollutants is based on the amount of particulate matter ("PM") a facility emits. PM refers to liquid or solid particles of various sizes that can include ash, metals, and other organic chemicals. Pursuant to the Texas State Implementation Plan ("SIP")[1], the emissions of a power plant may not exceed "0.3 pound of total suspended particulate per million [British thermal units ("Btu")] heat input, averaged over a two-hour period."[2] 30 TEX. ADMIN CODE § 111.153(b).

---

[1] The Clean Air Act ("CAA") requires that each state submit a State Implementation Plan ("SIP") to the Environmental Protection Agency ("EPA") for approval. See 42 U.S.C. § 7210.
[2] EPA approved this standard as an applicable requirement of the Texas SIP. See 74 Fed. Reg. 19,144 (Apr. 28, 2009) (approving 30 TEX. ADMIN. CODE § 111.153(b) into the Texas SIP).

Plaintiff contends that Defendants violated the PM limits outlined in the Texas SIP and Big Brown Plant's Title V permit. Using Defendants' self-reported heat input and sulfur dioxide emissions data, Plaintiff avers that Big Brown Plant exceeded the 0.3 lb/mmBtu PM limit on at least 370 occasions between January 2008 and July 2011. Despite its claimed compliance with Big Brown Plant's Title V permit, Plaintiffs argue that Defendants' interpretation of the 2008 Title V permit is inconsistent with the "minor revision" application used to revise the plant's permit. Furthermore, according to Plaintiff, other credible evidence, as provided by Plaintiff's experts, can also demonstrate that PM violations have and continue to take place at Big Brown Plant.

Defendants do not contest the fact that there were instances between January 2008 and July 2011, when emissions exceeded 0.3 lb/mmBtu. Instead, Defendants argue that it is entitled to summary judgment because those PM exceedances still complied with the PM limits in Big Brown Plant's Title V permit, which was ultimately approved by the Texas Commission on Environmental Quality ("TCEQ") and EPA on December 1, 2008. For that reason, the jurisdictional bar in 42 U.S.C. § 7607(b)(2) prohibits Plaintiff from pursuing a lawsuit for PM violations that occurred *after* December 1, 2008. Defendants additionally argue that claims of PM exceedances that occurred *before* December 1, 2008, should also be dismissed because the Title V permit rendered those claims moot. Defendants finally maintain that considerations of

"credible evidence" outside the requirements of the Title V permit would be inappropriate in this lawsuit.

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The movant is entitled to summary judgment if, after an adequate time for discovery, the non-movant fails to make a sufficient showing on an essential element of his case with respect to which he bears the burden of proof. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant must initially demonstrate the lack of evidence supporting the non-movant's case. See id. at 323. The burden then shifts to the non-movant to present some evidence showing that there is a genuine issue for trial. See id. at 324.

A genuine issue for trial exists if "the evidence is such that a reasonable jury could return a verdict for the non-movant." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Because that issue cannot be resolved without reference to "the criteria governing what evidence would enable the jury to find for [the non-movant]," the Court "must view the evidence presented through the prism of the substantive evidentiary burden." See id. at 254. However, in making this determination, the Court may not weigh the evidence or evaluate the credibility of the witnesses. See id. at 255. Instead, it must view all facts in the light most favorable to the non-movant and make all justifiable inferences in her favor. See id.

## III. The Statutory Framework of Applicable Provisions

### a. Title V Permits

Title V of the Clean Air Act, 42 U.S.C. §§ 7661–7661f, establishes an operating permit program for major sources of air contaminants. Under the CAA, "[I]t shall be unlawful for any person to violate any requirement of a permit issued under this subchapter, or to operate [a regulated source] ... except in compliance with a permit issued by a permitting authority under this subchapter." 42 U.S.C. § 7661a(a). A Title V permit *compiles* all the various applicable requirements for a facility into a single federally-enforceable air pollution permit. *See United States v. Cemex, Inc.*, 864 F. Supp. 2d 1040, 1045 (D. Colo. 2012) (emphasis added); 42 U.S.C. §§ 7661c(a),(b).

The permit is crucial to the implementation of the Act: it contains, in a single, comprehensive set of documents, all CAA requirements relevant to the particular polluting source. *Com. of Va. v. Browner*, 80 F.3d 869, 873 (4th Cir. 1996). A Title V permit has been described as a "source-specific bible for Clean Air Act compliance." *Virginia v. Browner*, 80 F.3d 869, 873 (4th Cir. 1996). "Similar to other CAA programs, Title V permits are issued by the state permitting authority, but are subject to EPA review and veto." *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008, 1012 (8th Cir. 2010) (citations omitted). Once approved by a state authority like the TCEQ, the "Title V permit assure[s] compliance with all emission limitations and other substantive CAA requirements that apply to the source." *Id.*

### b. Minor Permit Modifications

Minor permit modifications can be utilized to amend a previously-approved Title V permit, provided that the changes: (1) does not violate any applicable requirement of the permit; (2) does not significantly alter existing monitoring, reporting, or recordkeeping requirements in the permit; (3) does not require or modify a case-by-case determination of an emission limitation or other standard; (4) does not seek to establish or change a permit term or condition to avoid an applicable requirement that the source would otherwise be subject; and (5) does not constitute a modification under Title I of the CAA. 30 TEX. ADMIN. CODE § 122.215.[3] The TCEQ's requirements for minor revisions closely resemble the EPA's Title V regulations.[4]

As are required for "significant revisions," "public announce requirements apply to minor permit revisions." 30 TEX. ADMIN. CODE § 122.215(a).[5] The application for a minor revision must also comply with § 122.217 of the Texas Administrative Code, and be submitted to the executive director at the TCEQ for review. Minor permit revision applications are then submitted to the EPA

---

[3] See 66 Fed. Reg. 63,318 (Dec. 6, 2011) (EPA approval of Texas's Title V program).
[4] Minor permit modification procedures may only be used for changes that: (1) do not violate any applicable requirement; (2) do not involve significant changes to existing monitoring, reporting or recordkeeping requirements; (3) do not require or change a case-by-case determination of an emission limit or other standard; (4) do not seek to establish or change a permit term or condition assumed to avoid an applicable requirement such as an emission cap; (5) are not modifications under Title I of the Act; and (6) are not required by the state program to be processed as a significant modification. 40 C.F.R. § 70.7(e)(2)(i).
[5] "The public notice requirements for minor permit revisions are satisfied by the TCEQ providing notice of the minor revision on its website." 45 TEX. PRAC. ENVT'L LAW § 5:10 (2d ed.).

6

administrator and the "affected states" for any objections. 30 TEX. ADMIN. CODE § 122.217(d). Once the completed application satisfies all the procedural steps, including the notice requirements, the executive director can approve the minor revision for incorporation into the applicant's Title V permit.[6]

## IV. Summary of the Arguments

### a. Defendants' Arguments

Big Brown Plant's Title V permit was originally approved in 2005. In 2008, Defendants submitted a "Minor Revision Application," which was reviewed and approved by the TCEQ. A notice of the minor permit revision was published on the TCEQ website;[7] however, neither Plaintiff nor any other individual submit any comments contesting the draft permit during the 30-day public comment period.[8] Defendants argue that it is entitled to summary judgment on any PM violations because it complied with its Title V permit. Defendants note that its Title V permit specifies how Defendant is to comply with the PM limitations set out in the Texas SIP. The Compliance Assurance Monitoring ("CAM") provision of the 2008 version of the Title V permit requires the measurement of stack opacity and

---

[6] See 30 TEX. ADMIN. CODE § 122.217(e) ("A minor permit revision may be issued by the executive director provided the following: (1) the changes meet the criteria for a minor permit revision; (2) the executive director has received a complete application; (3) the conditions of the permit provide for compliance with the requirements of this chapter; and (4) the requirements of this chapter for public announcement, affected state review, and EPA review have been satisfied.").

[7] Doc. 198-3.

[8] The notice of Big Brown Plant's minor permit application on the TCEQ website explained: "Any person may submit written comments on the draft permit. Comments relating to the accuracy, completeness, and appropriateness of the revised permit conditions may result in changes to the draft permit. See id.

7

records readings every six minutes.[9] These readings are measured by the plant's Continuous Opacity Monitoring System ("COMS"), and are reviewed according to two-hour blocks that "will start at the beginning of each hour of the day and end at the second clock hour (i.e. 0000 – 0200, 0200 – 0400, etc)."[10] Compliance is determined by averaging the COM readings of each two-hour block.[11] However, "[f]or each valid 2-hour block that *does not include* boiler startup, shutdown, maintenance, or malfunction activities, if the opacity exceeds 20% over the 2 hour block period, it shall be considered and reported as a deviation."[12]

Based on this revised CAM provision, Defendants claim that any opacity increases that occurred during "boiler startup, shutdown, maintenance, or malfunction activities," ("SSMM") would not be a PM violation. Defendants further argue that it complied with the requisite rules and procedures the minor permit revision to Big Brown Plant's Title V permit. Therefore, since Plaintiff limited their claims to PM exceedances that occurred during the SSMM periods of Big Brown Plant, Defendants maintain that there were no PM limit violations during the timeframe alleged by Plaintiff. In reality, Defendants argue, Plaintiff is attacking the revised Title V permit, which amounts to an impermissible collateral attack.

---

[9] Doc. 126-5 at 39.
[10] *Id.*
[11] *Id.*
[12] *Id.* (emphasis added).

8

### b. Plaintiff's Arguments

Plaintiff disagrees with Defendants' interpretation and argues that Defendants actually violated its Title V permit. Plaintiff notes that the CAM provision of the 2005 version of the Title V permit did not address SSMM activities.[13] Defendants had the CAM provision altered through a "Minor Revision Application" in 2008. While "minor revisions" are permitted by the Texas SIP, and Plaintiff does not contest the proceedings surrounding its approval, Plaintiff argues that Defendants' interpretation of the CAM provision goes beyond a permissible "minor revision." According to Plaintiff, the revised CAM provision could not exclude SSMM periods from complying with the PM limits set by the Texas SIP. Such a change would not be a "minor revision" because it would have altered an emissions limitation. Pursuant the Texas Administrative Code, any change to emissions limits cannot be approved through a minor revision. *See generally* 30 TEX. ADMIN. CODE § 122.215. Since Defendants' interpretation of the CAM revision necessarily changed the emissions limits, albeit during SSMM periods, Plaintiff contends that summary judgment must be denied because such an interpretation would not be consistent with a "minor permit revision."

---

[13] Doc. 126-4 at 28.

## V. Legal Analysis of Plaintiff's Second Cause of Action

### a. Plaintiff's Second Cause of Action is an Impermissible Collateral Attack of Big Brown Plant's Title V Permit

After considering the arguments, it is clear that Plaintiff is challenging the TCEQ and EPA's decision of passively approving the minor modifications to Big Brown Plant's Title V permit. Therefore, Plaintiff's second cause of action must be dismissed as such a challenge "divests district courts of jurisdiction over any claim that is the functional equivalent of a challenge to the appropriate provisions of a Title V permit that has been issued." *Texas Campaign for the Env't v. Lower Colorado River Auth.*, CIV.A. H-11-791, 2012 WL 1067211 (S.D. Tex. Mar. 28, 2012).

This case is analogous to *Sierra Club v. Otter Tail Power Co.*, 615 F.3d 1008 (8th Cir. 2010). There, the Sierra Club filed a similar citizen suit arguing that a power plant violated the limits imposed by the CAA's New Source Performance Standards ("NSPS"), despite the fact the power plant's amended Title V permit did not mandate NSPS compliance.[14] *Id.* The power plant in *Otter Tail Power* underwent physical and operational modification and applied for an amendment to its Title V permit. *Otter Tail Power*, 615 F.3d at 1012. The South Dakota Department of Environment and Natural Resources, approved the amended Title V permit, but did not require the defendants to comply with the

---

[14] The NSPS program provides "technology-based performance standards" that limits emissions from major new sources of pollution. *See* 42 U.S.C. § 7411(b). In other words, newly constructed or modified facilities would be subjected to the emissions limits established by the NSPS.

10

NSPS provisions of the CAA. *Id.* The EPA never took any action on the permit, and Sierra Club failed to petition the EPA to object to the issuance of the permit. *See id.* In its suit, Sierra Club contended that since there was a modification to the power plant, the defendant was liable for violations of the CAA's NSPS limits, even though the Title V permit authorized the activity. *See id.*

After considering the foregoing facts, the Eighth Circuit held the district court lacked subject matter jurisdiction to hear the claim. *See Otter Tail Power*, 615 F.3d at 1021. Since Sierra Club was alleging that the permit was "not in compliance with the requirements of the CAA," the court determined that lawsuit amounted to a collateral attack of the Title V permit. *Id.* at 1020. The Eighth Circuit concluded that Sierra Club needed to assert its objections to the plant's permit *during*, not after, the permitting process. *Id.* at 1022. The court reasoned, "[T]o allow plaintiffs to raise issues resolved during the permitting process long after that process is complete would upset the reasonable expectations of facility operators and undermine the significant investment of regulatory resources made by state permitting agencies."[15] *Id.* Thus, "judicial review through civil or criminal enforcement proceedings is unavailable whenever an individual could have...obtained such review." *Id.* at 1021 (quoting *Romoland School District v.*

---

[15] This rule was also stated in *Romoland School District v. Inland Empire Energy Center LLC,* 548 F.3d 738 (9th Cir. 2008), where the court stated, "By creating in 42 U.S.C. § 7661d(b)(2) an avenue of judicial review that passes through 42 U.S.C. § 7607, Congress effectively foreclosed the alternative avenue of citizen suit enforcement through 42 U.S.C. § 7604." *Id.* at 755.

11

*Inland Empire Energy Center LLC,* 548 F.3d 738, 755 (9th Cir. 2008) (internal citations omitted).

In the case before this Court, there are no material fact issues to support a claim that Defendants failed to report a PM deviation that occurred during normal plant operations. Additionally, there is no claim that Defendant failed to comply with the statutory requirements for a minor permit revision. As the jurisdictional limit here is paramount, the Court must be careful that it does not exceed its jurisdiction and consider claims that are "cleverly packaged" challenges of an EPA decision or ruling. *United Steelworkers of Am. v. Oregon Steel Mills, Inc.,* 322 F.3d 1222, 1225 (10th Cir. 2003). A plain reading of the Title V permit provides that Defendants are only required to report deviations that occur outside of SSMM activities. Plaintiff argues that the Title V permit, as construed by Defendants, violates the Texas SIP on emissions limits because the Texas rules do not exclude emissions compliance for periods outside of normal plant operations.

While Plaintiff may not agree with the compliance provisions of the Title V permit, Plaintiff is judicially barred from challenging the permit. *See Sierra Club v. Dairyland Power Co-op.,* 10-CV-303-BBC, 2010 WL 4294622, * 17 (W.D. Wis. Oct. 22, 2010) ("Judicial review of the administrator's decision is available only through the applicable court of appeals, not in the district court."). Once approved, a plaintiff is foreclosed from collaterally attacking the Title V permit that is issued to a power plant. 42 U.S.C. §§ 7661d(b)(2), 7607; *see also Otter Tail*

12

*Power*, 615 F.3d 1008. Such is the case even if the "deficiencies are overlooked and remain undiscovered until after the permit is issued." *United States v. EME Homer City Generation, L.P.*, 727 F.3d 274, 300 (3d Cir. 2013) (explaining that a collateral attack of a permit is impermissible, even if the approved permit was incomplete or its approval was improper). Should a permit deficiency go unnoticed for a period of time, the appropriate procedure would be for the EPA or the states to reopen the permit and add an omitted "applicable requirement," or amend any defect in the permit approving process.[16] *Id.* (citing 40 C.F.R. § 70.7(f)).

### b. CAA Jurisdictional Limit Applies to Minor Permit Modifications

In light of the requirements for minor permit modifications, Plaintiff argues that it did not have a "meaningful opportunity" to comment or object to Defendants' 2008 permit revision. Plaintiff directs this Court to 42 U.S.C. § 7607, which provides: "Action of the Administrator with respect to which review could have been obtained…shall not be subject to judicial review in civil or criminal proceedings for enforcement." While the Texas Title V rules establishes public petition requirements for significant permit revisions, which includes the public's ability to object to the EPA's response to a proposed permit, that provision does not apply to "minor" permit revisions. 30 TEX. ADMIN. CODE § 122.360(a) & (b).

---

[16] In fact, Plaintiff has taken advantage of this process with respect to the renewal of Big Brown Plant's Title V permit. Plaintiff raised general and specific objections to the renewal permit application, which has remained pending at the TCEQ since 2011. *See* Doc. 195-8.

13

As such, Plaintiff argues that it was unable to contest the approval of Defendants' 2008 minor revision.

It is clear that the statutory language of Texas's Title V rules offers less stringent notice requirements for minor permit revisions. However, Plaintiff has not convinced the Court that the Title V rules explicitly prevented Plaintiff or any other affected person from contesting a proposed minor permit revision. Section 7607 forecloses district court intervention on permit approval actions that *could* have been reviewed by the appropriate judicial authority. See 42 U.S.C. § 7607. Although Texas Title V rules do not enumerate any procedures for objections to applications for minor permit revisions, the rules likewise do not expressly prohibit concerned individuals from objecting to such a revision.

Additionally, Plaintiff has not identified a case where an affected person was barred from objecting to a minor permit modification. While admittedly difficult, Plaintiff still *could* have filed its objections to the 2008 minor permit revision during the permitting process. See *Lower Colorado River Auth.*, 2012 WL 1067211, at *9 (S.D. Tex. Mar. 28, 2012) ("Thus, where a challenge could have been raised to a Title V permit during the permit process, no judicial review can thereafter be obtained through enforcement proceedings."). Absent any allegations of legal inadequacies with respect to the public notice requirements, Plaintiff fails to demonstrate that judicial review was unavailable during the minor permit process. See *Otter Tail Power*, 615 F.3d at 1020 n. 9 (acknowledging that although the public notice requirements of a permit amendment may not have

14

been sufficiently specific for a proper objection, such a circumstance will not excuse a plaintiff from commenting on or contesting a proposed amendment during the permitting process). Moreover, even if Plaintiff contends that the TCEQ administrator abused his discretion in approving the application as a minor permit modification, "a petition to review his action may be filed only in the Courts of Appeals." *Hagedorn v. Union Carbide Corp.*, 363 F. Supp. 1061, 1067 (N.D.W. Va. 1973). Since the jurisdictional bar also applies to minor permit modifications, the Court lacks jurisdiction over the PM violations claim, as that claim should have been raised during the permitting process.

### c. "Credible Evidence Rule" Does Not Apply to Citizen Lawsuits

Notwithstanding the CAM monitoring requirements specified in the Title V permit, Plaintiff maintains that it can still submit other "credible evidence" to demonstrate a violation of the CAA and Title V permit. However, as Defendants correctly note, the credible evidence rule applies only to federal enforcement of an emission standard, and is "unavailable in citizen suites to enforce the emissions limitations contained in a state implementation plan." *Sierra Club v. TVA*, 430 F.3d 1337, 1352-53 (11th Cir. 2005). While the Texas SIP and Defendants' Title V permit does not preclude the use of other credible evidence or information, that provision is limited to compliance certification by the EPA or a state agency. 30 TEX. ADMIN. CODE § 122.132(e)(4)(B). In other words, other credible evidence can be utilized in determining "whether a source would have

been in compliance with applicable requirements if the appropriate performance or compliance test or procedure had been performed." 40 C.F.R. § 51.212(c).

Here, the Big Brown Plant Title V permit outlines the provisions of compliance with respect to CAM reporting during periods of shutdown, startup, or maintenance. While the credible evidence rule can be incorporated into a Title V permit as a means to determine compliance, the rule "creates no new rights or powers for citizen enforcers." *TVA*, 430 F.3d at 1353 (quoting *Credible Evidence Revisions*, 62 Fed. Reg. 8314-01, 8318). If expanded to citizen suits, a permit holder would have to defend itself against every conceivable measurement, test, or theory that can be submitted as credible evidence to challenge a power plant's compliance with its Title V permit. *See EME Homer City*, 727 F.3d at 298 ("The plain text of Title V, in turn, lists only two ways in which it can be violated: operating without a Title V permit or violating the terms of a Title V permit while operating a source."). Such a position would undermine the permit's objective as the "source-specific bible for Clean Air Act compliance." *Virginia v. Browner*, 80 F.3d 869, 873 (4th Cir. 1996). For that reason, a concerned citizen is limited to the compliance requirements, as defined in the Title V permit, when pursuing a civil lawsuit for CAA violations. *TVA*, 430 F.3d at 1353.

### d. Prior PM Violations Rendered Moot by Permit Modification

Finally, all claims of PM violations that occurred prior to December 1, 2008, which was the date of Big Brown Plaint's Title V permit, must be dismissed as moot. Once a Title V permit is issued, a civil action seeking civil penalties for

16

conduct allowed by the permit becomes moot. Similarly, "[a] case seeking injunctive relief based on conduct that has become lawful due to a change in the law is rendered moot by the change in law." *Sierra Club v. TVA*, 592 F. Supp. 2d 1357, 1376-77 (N.D. Ala. 2009). Thus, when the threat of a future violation or harm has been nullified by an approved permit, "there is no factual or legal ground to impose injunctive relief, and the case has become moot." *Id.*

Plaintiff concedes that the PM violations that occurred before December 1, 2008, were attributed to SSMM activities. Since CAA compliance as defined in Big Brown Plant's current Title V permit excludes the reporting of PM deviations that occurred during "boiler startup, shutdown, maintenance, and malfunction activities," claims of PM violations that transpired prior to December 1, 2008, were rendered moot by the issuance of the revised Title V permit.

## VI.  Conclusion

Plaintiff failed to demonstrate that Defendants violated the CAA or Big Brown Plant's Title V permit with respect to PM limitations. Allegations that the minor permit application improperly changed Texas's SIP emissions amounts to an impermissible collateral challenge of the Title V permit. As such, the Court is divested of subject matter jurisdiction to consider such claims. Additionally, Plaintiff may not rely on other credible evidence to sustain a PM violation because the credible evidence rule is inapplicable in citizen-initiated lawsuits. Finally, the EPA-approved Title V permit mooted Plaintiff's assertions of PM violations that occurred prior to December 1, 2008. Since there are no genuine

fact issues to sustain a claim that Defendants failed to comply with its Title V permit, Defendants' summary judgment motion on the PM compliance issue must be granted. Accordingly, it is

**ORDERED** that Defendants' Motion for Partial Summary Judgment as to Plaintiff's Second Cause of Action (Particulate Matter) is **GRANTED** in its entirety (Doc. 172). Plaintiff's second cause of action with respect to its PM violations claim is hereby **DISMISSED WITH PREJUDICE**. All other claims and pending motions remain unaffected by this Order.

**IT IS SO ORDERED.**

**SIGNED** this 10th day of February, 2014.

_____
**WALTER S. SMITH, JR.**
**UNITED STATES DISTRICT JUDGE**