

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| SIERRA CLUB,<br>　　Plaintiff,<br><br>v.<br><br>ENERGY FUTURE HOLDINGS<br>CORPORATION and LUMINANT<br>GENERATION COMPANY LLC,<br>　　Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Civil Action No. W-12-CV-108 |

## ORDER

Before the Court are two motions: (1) Plaintiff Sierra Club's Motion to Amend Sentence on Attorney Fees in Final Memorandum Opinion and Order; and (2) Defendant's Motion for Attorneys' Fees. Plaintiff brought this citizen suit pursuant to § 304 of the federal Clean Air Act (CAA), 42 U.S.C. § 7604. Plaintiff claims that Defendants Energy Future Holdings Corporation (EFH) and Luminant Generation Company LLC (Luminant) own a coal-fired power plant, Big Brown Plant (Big Brown) in Freestone County, Texas that has and continues to violate particulate matter (PM) and opacity limits under the CAA. The Court granted partial summary judgment in favor of Defendants and determined that there were no PM violations at Big Brown. On February 24, 2014, this Court held a three-day bench trial on the remaining issues on whether Defendants violated the opacity limits at Big Brown. After both parties had the opportunity to present closing arguments, the Court ruled in favor of Defendants. The Court issued a Memorandum Opinion of Findings of Fact and Conclusions of Law and stated

1

that an award of the costs of litigation (including reasonable attorney and expert witness fees) to Defendant is appropriate pursuant to 42 U.S.C. § 7604(d).

On April 9, 2014, Defendant's filed its Motion for Award of Attorney and Expert-Witness Fees, requesting nearly $6.8 million in litigation costs associated with this lawsuit. On April 25, 2014, Plaintiff filed its Motion to Amend Sentence, asking the Court to amend its prior order that allowed an award of Defendants' attorneys' fees where appropriate. Defendant filed a response to Plaintiff's Motion to Amend on April 28, 2014, and Plaintiff filed a reply on August 5, 2014. Plaintiff's Response to Defendant's Motion for Award of Attorney and Expert-Witness Fees was filed on August 13, 2014, and Defendant's Reply followed on August 22, 2014. After careful consideration of the parties' arguments, the record, and the relevant legal authority, the Court denies Plaintiff's Motion to Amend and grants Defendant's Motion for Award of Attorneys and Expert-Witness Fees with the exception of the conditional appellate fees request.

## DISCUSSION

### I. The *Christianburg* Standard Applies.

The Court holds that the standard in *Christianburg Garment Co. v. E.E.O.C.*, 434 U.S. 412, 422 (1978) is applicable to this case and is the threshold Defendants must meet in order to receive attorneys' fees. In *Christianburg*, the Supreme Court held that prevailing defendants may be awarded attorney and expert fees if the plaintiff's claims were "frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." *Id.* Fees may

be awarded even if the claims were not brought in bad faith. *Id.* at 421. Although *Christianburg* construed attorneys' fees in the context of a 42 U.S.C. § 1988 civil rights case, the standard is applicable "in the same manner" to the CAA's fee-shifting provision. *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 560 (1986); *accord Penn. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 713 n.1 (1987). A heightened standard is applicable in determining whether a fee award is appropriate when a defendant prevails because of the public policy importance for "plaintiffs with legitimate, but not airtight, claims [to not] be discouraged from pursuing such claims." *Sierra Club v. Cripple Creek & Victor Gold Mining Co.*, 509 F. Supp. 2d 943, 950 (D. Colo. 2006). This consideration is of particular concern as applied to CAA citizen suits because the citizen-plaintiff seeks no monetary relief for itself; instead, the citizen-plaintiff is acting to protect the public interest.

The Fifth Circuit has not expressly required district courts to apply the *Christianburg* standard for assessing fees and costs against a plaintiff in a CAA citizen suit, but has affirmed defendants' fee awards where fees were found to be "appropriate" based on the record. *See Sierra Club v. Shell Oil Co.*, 817 F.2d 1169, 1176 (5th Cir.), *cert. denied*, 484 U.S. 985 (1987); *Bentley v. Fanguy*, 396 F. App'x 130, 131-32 (5th Cir. 2010). Moreover, the Fifth Circuit has affirmed fee awards to a defendant without discussion of the applicable standard. *See Shell Oil Co.*, 817 F.2d 1169, 1176 (upholding the district court's judgment on attorneys' fees because the plaintiff had not argued any abuse of discretion); *see*

3

*also Marbled Murrelet v. Babbitt*, 182 F.3d 1091, 1095-96 (9th Cir. 1999) (explaining that *Shell Oil* does not provide "any analysis of what standard should be applied" to a fee request). However, several other jurisdictions have applied the *Christianburg* standard to environmental fee-shifting statutes such as the CAA. *See, e.g., Marbled Murrelet*, 182 F.3d at 1094-95; *Citizens for a Better Env't v. Steel Co.*, 230 F.3d 923, 931 (7th Cir. 2000); *Animal Welfare Inst. v. Feld Enm't, Inc.*, 944 F. Supp. 2d 1, 11 (D.D.C. 2013). Based on the public policy considerations in support of requiring a heightened standard for defendants to be awarded attorneys' fees and the abundance of support from other jurisdictions in favor of applying the *Christianburg* standard to environmental fee-shifting provisions, the Court holds that this standard applies to the case at hand.

## II.   Attorneys' Fees Standard.

Federal Rule 54 provides that the prevailing party may motion the court for attorneys' fees. However, in his motion, the movant must specify the statute, rule, or other grounds entitling him to the fees, as well as the amount sought or a fair estimate of the fees. Fed. R. Civ. P. 54(d)(2). Pursuant to 42 U.S.C. § 7604(d), "[t]he court . . . may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such an award is appropriate." 42 U.S.C. § 7604(d). Additionally, "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees

reasonably incurred because of such conduct" if shown by clear and convincing evidence. 28 U.S.C. § 1927; *Proctor & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525-26 (5th Cir. 2002) (discussing the applicable burden of proof).

The party requesting fees "bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *see also Bode v. United States*, 919 F.2d 1044, 1047 (5th Cir. 1990) (per curiam) (holding that fee applicant's burden is met "only by presenting evidence that is adequate for the court to determine what hours should be included in the reimbursement"). The Fifth Circuit has opined that it "cannot overemphasize the concept" that a district court has broad discretion in the determination of attorneys' fees, as well as the appropriate dollar amount, because of its "superior understanding of the litigation." *Associated Builders & Contractors of Louisiana, Inc. v. Orleans Parish Sch. Bd.*, 919 F.2d 374, 379 (5th Cir. 1990). The district court must determine if the "reported hourly rate is reasonable and whether the reported tasks are duplicative or unrelated to the purposes of the law suit." *Id.* "In determining the amount of an attorney fee award, courts customarily require the applicant to produce contemporaneous billing records or other sufficient documentation so that the district court can fulfill its duty to examine the application for noncompensable hours." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995) (per curiam) (quoting *Bode*, 919 F.2d at 1047). "The district court may properly reduce or eliminate hours when the supporting documentation is

too vague to permit meaningful review." *Id.* at 326. Vague entries are those that are "not illuminating as to the subject matter" or "vague as to precisely what was done." *Id.*

The award of attorneys' fees is calculated from a lodestar base, which is calculated by multiplying the number of hours the attorney reasonably spent on the case by a reasonable hourly rate. *Penn. v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). The party requesting attorneys' fees must also show that "billing judgment" was exercised, and that unproductive, excessive, or redundant hours were omitted from its requested amount. *Walker v. U.S. Dep't of Hous. & Urban Dev.*, 99 F.3d 761, 769 (5th Cir. 1996). Ordinarily, there must be a showing that the average hourly rate utilized was reasonable in the relevant community for similar work. *Kellstrom*, 50 F.3d at 328. But if the case evidences that it is necessary for the party seeking fees to retain out-of-district counsel, then that counsel's "'home' rates should be considered as a starting point for calculating" the reasonable hourly billing rate. *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382 (5th Cir. 2011). If attorneys' fees are requested in a case that involves claims that do not permit fee recovery, the requesting party must segregate non-recoverable fees from recoverable fees. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 313 (Tex. 2006). However, if the legal services were necessary for both the non-recoverable fees and recoverable fees, segregation of fees is not required. *Id.*

The adjustment of the lodestar base, either upward or downward, "should be modified only in exceptional cases." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). Though infrequently increased, the lodestar base can be adjusted after considering the following factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the attorney's customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Ga. Highway Exp., Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974). "In applying [the *Johnson* factors], the district court must explain the findings and the reasons upon which the award is based. However, it is not required to address fully each of the 12 factors." *Curtis v. Bill Hanna Ford, Inc.*, 822 F.2d 549, 552 (5th Cir. 1987) (citation omitted). Indeed, "[t]he district court need not specifically discuss the *Johnson* factors where it has applied the *Johnson* framework." *E.E.O.C. v. Argo Distribution, LLC*, 555 F.3d 462, 473 (5th Cir. 2009) (citing *Cobb v. Miller*, 818 F.2d 1227, 1232 (5th Cir. 1987).

7

## III. Legal Arguments.

### A. <u>Defendants' 42 U.S.C. § 7604(d) Motion for Attorneys' Fees.</u>

Defendants claim that a lodestar sum of $6,053,940.19—including $5,175,319.56 for attorney fees and $878,620.63 for expert-witness fees—is warranted in this case. Additionally, Defendants argue that they are entitled to a costs award of $392,079.37 and a conditional award of appellate fees in the amount of $300,000. Taken together, Defendants contend they are entitled to a total award of $6,746,019.56. The total amount is based on time sheets reflecting 15,511.1 hours (12,508.2 by counsel and 3,002.9 by expert witnesses) billed in connection with this suit. The total hours billed do not include an estimated hundreds of hours worked by Defendants' in-house counsel, who participated in the entire case. Defendants counsel assert that proper billing judgment was exercised before submitting any bills to Defendants based on the fact that contemporaneously produced time sheets documenting all work done pertaining to the case were created throughout litigation, any unnecessary charges from pre-bills were written off, and fees billed that in-house counsel determined were not reasonable were reduced accordingly.

Defendants' fees are based on customary hourly rates and range from $220 to $925 per hour stemming from the legal issues involved and the market in which the legal services were provided. Defendants further claim these amounts reflect both customary and market rates that the Defendants' agreed to pay. Although Defendants are not seeking a fee enhancement under the *Johnson*

8

factors, they argue that relevant factors four, eight, and eleven reaffirm the presumption that "[a] reasonable attorney's fee is the product of the reasonable hours incurred times the reasonable rate." *Powell v. C.I.R.*, 891 F.2d 1167, 1173 (5th Cir. 1990). Finally, Defendants argue that Plaintiff is one of the most well-funded environmental organizations in the U.S. and has the ability to pay the requested fees.

In support of its legal arguments requesting attorneys' fees, Defendants contend that Plaintiff's PM claim was baseless from its inception and that this Court's dismissal at summary judgment was proper. Moreover, due to Plaintiff's continued pursuit of the PM claim despite being informed of its shortcomings prior to the filing of the lawsuit, Defendant was forced to conduct discovery, hire experts, conduct briefing, and present evidence to refute the claim. According to Defendants, Plaintiff's inclusion of EFH was without foundation because it knew EFH neither owned nor operated Big Brown. Defendant's further claim that Plaintiff's one standing witness, who was not called to testify at trial, never had any injury or harm that could be linked to Big Brown's operations. Defendants also point to the Texas Commission on Environmental Quality's (TCEQ) investigation reports, which found no violations of Big Brown's operations. Despite the TCEQ's findings and knowledge that it is the primary authority in Texas to implement the CAA, Plaintiffs continued the case towards trial. Lastly, Defendants argue that Plaintiff's lawsuit became more clearly meritless when this Court determined the Defendants had valid affirmative defenses to the claims.

B. <u>Plaintiff's Response.</u>

In opposition, Plaintiff contends that the *Christianburg* standard applies, and its claims were not frivolous, unreasonable, or without foundation. Because of the danger of implementing hindsight logic, the inherent complexity of the issues of the case, and the reasonable decision to proceed with its claims as the case progressed, Plaintiff claims the *Christianburg* standard was not met. However, if the Court determines that fees should be awarded, Plaintiff argues that the requested amount is grossly excessive. More specifically, the rates are not in conformity with those charged in the Waco community in which the Court is located, and likewise, the Dallas-based counsel rates that were charged also exceed the Dallas-market rates. Plaintiff disputes Defendants' lodestar calculation, arguing hours billed must be reduced because both attorney and expert fees and expense hours were not adequately documented, the hours are unreasonable, and fees should not be awarded in advance for appeal.

C. <u>Defendants' Reply</u>

Defendants counter Plaintiff's arguments by noting that the PM claim withstood dismissal pursuant to a Rule 12(b)(6) motion only as a result of artful pleading (i.e., the omission of the fact that Big Brown had a Title V permit explicitly exempting it from the ramifications of PM deviations occurring during periods of startup, shutdown, maintenance, or malfunction activities, and all of the alleged PM violations took place during these events). According to Defendants, Plaintiff introduced misleading evidence at trial—namely an exhibit

regarding maintenance reports that omitted key information that would have directly contradicted the main purpose to which the exhibit was presented. Furthermore, Defendants reiterated that Plaintiff failed to present any evidence of causation and harm, and Plaintiff's failure to present evidence disputing TCEQ's investigation reports indicates the entirety of the case was frivolous, unreasonable, or groundless.

In rebutting the number of hours billed and rates associated with those hours, Defendants point out that Plaintiff's counsel is encompassed exclusively of non-Waco counsel, and therefore Defendants are entitled to do the same (although local counsel was hired to assist in the case). Moreover, the complexity of the issues, speciality of the area of law, and sheer amount of damages sought ($575 million) dictated that out-of-town attorneys were required for adequate representation. Defendants contend that the hourly billing rates reflect the ranges of prevailing market rates in their communities, using declarations of attorneys within the Dallas area as support. Defendants assert its hours were adequately documented, with all time recorded down to quarter-of-an-hour increments supported by descriptions of the tasks performed and that this documentation, some of which was block billed, provides the Court with enough information to assess the reasonableness of the total fees. Further, Defendants support the number of hours billed by discussing the plethora of documents they were required to produce as well as the tens of thousands of pages of data that needed review in response to the suit, the nationwide team of attorneys Plaintiff

hired, the unreasonable litigation tactics employed throughout litigation, and the need to retain the same number of experts as the Plaintiff.

### IV. Plaintiff's Claims Meet the *Christianburg* Standard Justifying Attorneys' Fees for Defendant.

After considering the parties' arguments and documents in support thereof, this Court finds that Plaintiff's claims were frivolous, unreasonable, or groundless, and thus Defendants are entitled to an attorneys' fees award. The Court also finds that Defendants' amount of fees and costs requested are reasonable, with the exception of the conditional appellate fee sum of $300,000. Therefore, Defendants are entitled to a total of $6,446,019.56.[1] "A trial court has wide discretion in applying [the *Christianburg*] standard." *Fox v. Vice*, ___ U.S. ___, 131 S. Ct. 2205, 2211 (2011). "Determinations regarding frivolity are to be made on a case-by-case basis." *Doe v. Silsbee Indep. Sch. Dist.*, 440 F. App'x 421, 425 (5th Cir. 2011) (quotations and citations omitted). "[W]hether the court dismissed the case or held a full trial" is one of many factors in determining if a claim is frivolous, unreasonable, or groundless, but "'[t]hese factors are . . . guideposts, not hard and fast rules.'" *Id.* (quoting *E.E.O.C. v. L.B. Foster Co.*, 123 F.3d 746, 751 (3d Cir. 1997)). "Some frivolous cases impose large costs on defendants when they require counsel to wade through voluminous records or review many cases." *In re TCI Ltd.*, 769 F.2d 441, 448 (7th Cir. 1985). Citizen suit cases in particular can "require substantial discovery and litigation, even

---

[1] Total fees ($6,053,940.19) plus total costs ($392,079.37) = total fee award ($6,446,019.56).

when they are groundless from the outset." *Animal Welfare Inst. v. Feld Entm't, Inc.*, 944 F. Supp. 2d 1, 17 (D.C.C. 2013) (awarding attorneys' fees in an Endangered Species Act case after trial) (quotations and citations omitted). "Indeed, 'the most critical factor' in determining the reasonableness of a fee award 'is the degree of success obtained.'" *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)).

Here, Defendants were successful against all of Plaintiff's claims. Plaintiff was unable to show a prima facie case of a PM violation, and the claim was dismissed at the summary judgment stage of litigation. Plaintiff was aware that Big Brown's Title V permit exempted it from PM deviations during maintenance, startup, or shutdown activities prior to filing suit, which rendered the claim meritless. And at trial, Plaintiff failed to prove any causation or injury to its lone standing witness or any other individual. Moreover, the one standing witness in the case was not even placed on Plaintiff's witness list even with the awareness that proving causation and linking the opacity violations at issue to injuries was required in order to prevail. Additionally, despite Plaintiff's knowledge that EFH had no role in the ownership or operations of Big Brown, it persisted in keeping EFH as a Defendant in the lawsuit. Even prior to the filing of the lawsuit, the TCEQ, who are experts in this field, had previously documented through its investigation reports that there were no PM or opacity violations of the CAA at Big Brown. Defendants informed Plaintiff that these reports cannot be undermined. But even with this knowledge at its disposal, Plaintiff admitted that

they failed to analyze or investigate the TCEQ investigation reports and filed suit. Consequently, after immense discovery, expense, and use of judicial resources, this Court found no evidence supporting any deficiency in the TCEQ's investigation reports. The evidence at trial, however, did reveal that during approximately 98.5 percent of the time that Big Brown was under normal operations, the opacity was generally 10 percent or less—far below the 30 percent limit. Moreover, each and every one of the opacity events that triggered a TCEQ investigation report found that an affirmative defense pursuant to the Texas Administrative Code was satisfied. Defendants do not seek an upward adjustment of their fees using the *Johnson* factors, but a review of the factors further favors awarding the fees Defendants requested. Plaintiff's actions in this case met the *Christianburg* standard, and a full fees and costs award is warranted in favor of the Defendants.

Plaintiff has also failed to persuade the Court that Defendants' numbers of hours billed and billing rates are unreasonable. Defendants provided contemporaneously created billing records that show adequate billing judgment was implemented. Plaintiff objected to Defendants' utilization of block billing, but this does not automatically render an attorneys' fees request unreasonable. *See, e.g., Hollowell v. Orleans Reg'l Hosp. LLC*, 217 F.3d 379, 392-93 (5th Cir. 2000) (affirming an attorneys' fees award based on lumped billing records that were "specific enough to determine that the hours claimed were reasonable for the work performed); *Trulock v. Hotel Victorville*, 92 F. App'x 433, 434 (9th Cir. 2004)

14

(holding that block billing "is not a basis for refusing to award attorneys' fees"); *Cadena v. Pacesetter Corp.*, 224 F.3d 1203, 1215 (10th Cir. 2000) (concluding that block billing "is not per se forbidden"). Plaintiffs other two complaints regarding Defendants billing documentation are without merit. Neither the failure to provide a chart more specifically detailing billing nor redacting portions of their time records prevented the Court from ascertaining that the fees demonstrate reasonable, sound billing judgment.

Furthermore, the Court finds that the specific legal issues the case presented and the amount of damages Plaintiff sought warranted retaining a legal team primarily consisting of out-of-district counsel whose home-market rates are applicable. "Where, as here, abundant and uncontradicted evidence proved the necessity of . . . turning to out-of-district counsel, the . . . 'home' rates should be considered as a starting point for calculating the lodestar amount[,]" and "the district court retains discretion to adjust the lodestar and achieve an overall reasonable fee award." *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 382 (5th Cir. 2011). "The relevant market . . . may extend beyond the local geographic community." *Casey v. City of Cabool, Mo.*, 12 F.3d 799, 805 (8th Cir. 1993). "The idea that a firm should be restricted to the hourly rate typical in the locale of the case is unduly parochial particularly in this age of national and regional law firms working on larger more complex . . . cases of more than local import." *Zolfo, Cooper & Co. v. Sunbeam-Oster Co., Inc.*, 50 F.3d 253, 260 (3d Cir. 1995) (quotations and citations omitted). Defendants have shown that they participate

15

in a market requiring more specialized and sophisticated legal services, which is national in scope. Accordingly, Defendants securing out-of-district counsel was "necessary to secure adequate representation." *McClain*, 649 F.3d at 383. Moreover, Defendants, unlike Plaintiff, did hire local counsel who assisted in the case. But more importantly, two of the out-of-district firms that Defendants hired were also working to defend a similar case, also brought by Sierra Club, in a neighboring district. Retaining two separate teams strictly composed of local counsel in each case would have been highly inefficient and a waste of resources.

The billing rates that Defendants' counsel charged are reasonable because they are within their home-market rates. The Fifth Circuit has held that when counsel's billing rate "is within the range of prevailing market rates, the court should consider this rate when fixing the hourly rate to be allowed." *Islamic Ctr. of Miss., Inc. v. City of Starkville, Miss.*, 876 F.2d 465, 469 (5th Cir. 1989). Based on the evidence presented to the Court, it is clear that Defendants' rates fall within the market rate range for complex litigation cases such as the case at hand. Therefore, Defendants are entitled to fees in the hourly rates requested.

Because the *Christianburg* standard has been met, Defendants' expert-witness fees and lawsuit costs are also awarded. Defendants retained four experts—the same number as Plaintiff—in response to the production of Plaintiff's expert-witness reports. The Court finds no indication that it was unreasonable for Defendants to hire these experts in an effort to zealously

defend against Plaintiff's claims. Awarding costs is also warranted because they were reasonable. *See Mennor v. Fort Hood Nat'l Bank*, 829 F.2d 553, 557 (5th Cir. 1987). The costs show no signs of extravagance or that they were unnecessary in defending the lawsuit.

However, the conditional appellate fees requested are rejected. Both the local and Fifth Circuit rules indicate that fees may only be awarded after the work was completed. *See* W.D. Tex. Local Rule CV-7(j)(1); *see also* 5th Cir. R. 47.8.1 (indicating fees may be awarded for "work done"). Many federal courts have refused awarding conditional fees. *See, e.g., Joe Hand Promotions, Inc. v. Ambiente Bar LLC*, 2014 WL 580767, at *3 n.6 (S.D. Tex. Feb. 13, 2014) (denying conditional fees); *Carroll v. Sanderson Farms, Inc.*, 2014 WL 549380, at *23 (W.D. Tex. Feb. 11, 2014 (rejecting conditional appellate attorneys' fees); *Watkins v. Input/Output, Inc.*, 531 F. Supp. 2d 777, 786 (S.D. Tex. 2007) (same).

## CONCLUSION

The Court **DENIES** Sierra Club's Motion to Amend and **GRANTS** EFH and Luminant's Motion for Attorneys' Fees with the modification that no conditional appellate fees shall be awarded. Accordingly, EFH and Luminant will recover **$6,446,019.56** in attorneys' fees, expert-witness fees, and costs from Sierra Club.

**SIGNED** on this 25 day of August, 2014.

WALTER S. SMITH, JR.
UNITED STATES DISTRICT JUDGE